## A01A0167. RICARTE v. THE STATE.
### (547 SE2d 703)

ANDREWS, Presiding Judge.

A jury convicted Louis Ramirez Ricarte of three counts of armed robbery, two counts of kidnapping, five counts of aggravated assault, kidnapping with bodily injury, and theft by receiving stolen property. Ricarte was acquitted of aggravated battery. After being sentenced as a recidivist under OCGA § 17-10-7 (b) to life imprisonment without parole, Ricarte filed a motion for new trial. In denying that motion, the trial court found that Ricarte failed to show that his trial counsel was ineffective and further found that the evidence was sufficient to sustain the verdict.

On appeal, the evidence must be considered in a light most favorable to the verdict. *Ward v. State*, 242 Ga. App. 246 (529 SE2d 378) (2000). When viewed in that manner, the evidence establishes that Ricarte and his co-defendant, Frederick Williams, sledgehammered their way into a SouthTrust bank branch before opening time, took hostages, fractured a bank employee's skull, stole money, and shot at police. More specifically, after breaking the glass on a rear door, Ricarte, wearing a stocking mask and gloves, and Williams, also disguised, entered the bank. Ricarte brandished a sawed-off shotgun and a Glock 9-millimeter handgun, and Williams used a .357 Magnum pistol. Armed with the shotgun, Ricarte ordered three bank

---

employees, Karen Kaplan, Kenneth Horne, and James Tyson, to open the vault. Kaplan entered the first part of a code, then Horne attempted to enter the second portion. After Horne experienced difficulty with the combination, Williams suggested blowing off his leg. When Horne still had trouble opening the vault, Williams smashed his handgun against Horne's head, fracturing his skull. After Kaplan managed to open the vault at gunpoint, the men were ordered facedown onto the floor.

Responding to a report of an armed robbery in progress, three police officers arrived and noticed the shattered glass door and a car behind the bank with its doors open and engine running. The vehicle had been stolen six days earlier. Through the front glass doors, Detective T. C. Medlin saw a masked gunman holding a sawed-off shotgun.

Despite the police presence, Williams exited a rear door with the duffel bag containing stolen cash. When Sergeant Kenneth Larson shouted, "[p]olice, freeze," Williams spun around and started shooting. Williams also fired at Officer S. J. Rainey, who returned fire. While running around a corner of the bank, Williams fired at Detective Medlin, who, after returning fire, pursued Williams on foot. A motorist who saw the shootout and saw Williams run toward an alley behind a nearby strip mall helped direct Medlin. Detective Medlin apprehended Williams emerging from the alley, clutching his side where he had been wounded during the gun battle. The .357 pistol was tucked inside Williams' pants. The green duffel bag belonging to Ricarte and recovered at the scene of Williams' arrest contained two wigs, a bandanna, shotgun shells, Glock magazine clips, ammunition for the .357, and more than $32,000 in bundled cash stolen from the bank.

Meanwhile Ricarte remained inside the bank. After firing several shots at police, Ricarte placed his shotgun at the back of Kaplan's head and pushed her toward a door. Threatening repeatedly to kill her, Ricarte forced Kaplan to move around the bank ahead of him. Police established communication with Ricarte to try to persuade him to surrender peacefully. When Ricarte finally exited the bank with Kaplan in front of him, he immediately was arrested.

Ricarte took the stand on his own behalf. Ricarte admitted masterminding the details of the armed robbery, including the use of the sledgehammer to gain entry and the use of the shotgun and two handguns during the holdup. Ricarte admitted taking Kaplan hostage and using her as a human shield. The gist of Ricarte's defense was that he was a federal parolee beset with medical problems and unable to find employment or to obtain disability benefits. He explained that he had selected a federally insured bank to rob, so that if caught he would be incarcerated in a federal facility where he

could receive medical treatment. In rationalizing his actions, Ricarte explained, "I was looking for . . . retirement money and [to] take care of my medical problems." The jury convicted both perpetrators.

1. Ricarte contends that the trial court erred by denying his right to put the jury charge conference on the record.

At the close of evidence, the trial court excused the jury and the court reporter until 2:00 p.m. but directed the return of the defendants and counsel at 1:15 p.m., when the charge conference would begin. Only after the conference was already underway did Ricarte's counsel belatedly request its recordation, and the trial court refused the request.

In a criminal case, all testimony and proceedings except the argument of counsel must be recorded by a court reporter. OCGA § 17-8-5 (a). The term "proceedings" includes objections, rulings, and other matters which occur during the course of evidence as well as any post-trial procedures. *State v. Graham*, 246 Ga. 341, 343 (271 SE2d 627) (1980). However, a charge conference is not a matter which occurs during the presentation of evidence and is not considered part of the "proceedings." *McBride v. State*, 213 Ga. App. 857, 861 (11) (446 SE2d 193) (1994). No error occurred here.

2. Ricarte contends that the trial court erred by denying his motion to strike two jurors for cause and by denying his motion for mistrial after a member of the jury disclosed that she recognized a State witness.

Whether to strike a juror for cause lies within the sound discretion of the trial court. *Kirkland v. State*, 271 Ga. 217, 219 (518 SE2d 687) (1999). "In order to disqualify a prospective juror for cause on the basis that she could not fairly and impartially judge the case, the opinion must be so fixed and definite that it would not be changed by the evidence or the charge of the court during the trial of the case." (Citations omitted.) *Menefee v. State*, 270 Ga. 540, 542 (2) (512 SE2d 275) (1999).

(a) During voir dire, juror no. 14 expressed her personal abhorrence of guns and disclosed her support for the enactment of the Brady bill and the prevention of handgun violence. But when asked if she could decide the case on the evidence and law, she responded, "I can do that, I think." When asked, "[i]s it your belief that your life experiences would prevent you from being fair and impartial," she answered in the negative. Compare *Menefee*. Also during voir dire, juror no. 20 stated that his wife knew one of the prosecutors and may have provided day care services to his child. But juror no. 20 indicated he personally did not know the prosecutor and testified that he could be fair and impartial. The trial court did not manifestly abuse its discretion in refusing to disqualify this juror. *Diaz v. State*, 262 Ga. 750, 752 (2) (425 SE2d 869) (1993).

(b) During the trial, one of the jurors notified the trial court that she recognized one of the State's witnesses after he took the stand. She knew him as a police officer assigned to work at her child's school. When questioned outside the presence of other jurors, she agreed that she could decide the case on the evidence and law. Defense counsel did not elect to ask her any questions. The trial court did not abuse its discretion in determining a mistrial was not needed. *Parker v. State*, 220 Ga. App. 303, 310 (8) (469 SE2d 410) (1996).

3. Ricarte asserts that the trial court abused its discretion by denying his motion to sever the trial from his co-defendant. Unless the death penalty is sought, the severance of defendants' trials lies within the sound discretion of the trial court. OCGA § 17-8-4. Absent an abuse of that discretion, the court's decision will not be disturbed. *Slaughter v. State*, 240 Ga. App. 758, 759 (1) (525 SE2d 130) (1999). The defendant seeking severance must establish a clear showing of prejudice in a joint trial. *Dixon v. State*, 268 Ga. 81, 83 (2) (485 SE2d 480) (1997).

> In ruling on a motion to sever, a trial court should consider whether the number of defendants will create confusion of the evidence and the law applicable to each individual defendant, whether there is a danger that evidence admissible against one defendant will be considered against another despite the cautionary instructions of the court, and whether the defenses of the defendants are antagonistic to each other or each other's rights.

*Butler v. State*, 270 Ga. 441, 446 (4) (511 SE2d 180) (1999). Here, Ricarte contends that he was denied due process and prejudiced by confusion in the testimony and by his co-defendant's mere presence in the case. He also argues that he was prejudiced by his co-defendant's decision to represent himself. Despite Ricarte's claims to the contrary, the divergent activities of each armed robber were presented clearly to the jury. In fact, Ricarte was acquitted of the aggravated battery count involving maliciously causing harm to Horne by fracturing his skull. Nor were their defenses antagonistic. Ricarte's defense hinged on a claim that he desperately needed medical care and was financially unable to afford it; while Williams' defense pivoted on a claim of insanity. Ricarte failed to show how any defense used by Williams was so antagonistic to his own defense so as to constitute the denial of due process. See *Pryer v. State*, 245 Ga. App. 279, 282 (2) (537 SE2d 717) (2000).

Ricarte blames juror confusion for his conviction on Count 12, an aggravated assault charge, firing a deadly weapon at Detective Medlin, since he was shooting his weapon out the rear of the bank, not

the front where Medlin was positioned. This argument completely ignores well-established law that as a party to that crime, Ricarte was equally culpable. OCGA § 16-2-20 (b) (3); *Pryor v. State*, 179 Ga. App. 293 (1) (346 SE2d 104) (1986).

Finally, Ricarte asserts that because his case was not severed from his co-defendant's, the rules governing reciprocal discovery under OCGA § 17-16-3 were violated by Williams' failure to provide him with a list of witnesses prior to trial. But Ricarte has not suggested, let alone demonstrated, how he was harmed. See *Dixon*, 268 Ga. at 83 (2). Under these circumstances, we find no showing of actual prejudice, no denial of due process, and no abuse of discretion by the trial court in denying the motion to sever. See *Slaughter*, 240 Ga. App. at 759 (1).

4. Ricarte contends that his trial counsel was ineffective and that he was prejudiced by that deficient defense. Ricarte claims his counsel failed to request the court to strike three jurors; failed to properly cross-examine certain witnesses; announced he was unprepared to proceed during the co-defendant's case; continued to argue the defense of justification after the trial court refused to charge that defense; failed to object to improper prosecutorial comments during closing argument; failed to offer adequate mitigating evidence during sentencing; and failed to poll the jury.

To establish ineffectiveness, an appellant must show not only that his trial counsel's performance was deficient, but also that the deficiency prejudiced him. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997). Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffectiveness claim. *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997). A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous. *Harper v. State*, 232 Ga. App. 224, 226 (2) (501 SE2d 591) (1998). Moreover, an appellant must overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional conduct. *Ross v. State*, 231 Ga. App. 793, 795 (1) (499 SE2d 642) (1998).

In arguing the ineffectiveness claim, Ricarte asserts seven purported failures of his trial counsel. Three issues we decline to reach because the grounds differ from the ineffectiveness allegations raised and argued below and are deemed waived. *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993). As to the remaining issues:

(a) Ricarte claims that his counsel conducted unreasonable cross-examinations of various witnesses and failed to cross-examine the majority of witnesses. Although the State called about 17 witnesses, only a handful testified about substantive matters involving

Ricarte. Some witnesses provided testimony only implicating or pertaining to Williams. Counsel's decision not to highlight or reemphasize certain details of the State's case was a matter of trial tactics and not due to ineptitude. Such a tactical decision does not equate with ineffectiveness. *Harper*, 232 Ga. App. at 227 (2) (d).

(b) Ricarte complains that his counsel announced he was unprepared to proceed during his co-defendant's case. This claim is misleading. At the start of trial, Williams fired his public defender and, ignoring repeated admonitions from his ex-counsel and the court, opted to act as his own lawyer. On his own behalf, Williams called three witnesses, two doctors and a former employer. Dr. John Stuart Currie offered his professional opinion that Williams was insane at the time of the acts. Dr. Currie diagnosed Williams as paranoid schizophrenic, seriously mentally ill, psychotic, and having organic brain problems. Dr. Currie also testified that despite the diagnosis of paranoid schizophrenic, Williams could have been legally sane.[1] The next witness, Dr. Anita Pruitt, M.D., testified that while receiving treatment in the intensive care unit after the shootout, Williams appeared agitated, confused, and disoriented. Dr. Pruitt explained that "it's very common," for people in intensive care to act disoriented or confused. Williams' final witness, Joyce Gray, had hired Williams as a handyman for six or seven months before the bank robbery. According to Gray, she trusted Williams and allowed him free access to her home. Gray described Williams' behavior as "not normal" on some occasions when he had spent the night in a guest room.

Counsel for Ricarte elected not to cross-examine Dr. Currie, Dr. Pruitt, or Gray, ostensibly to preserve Ricarte's rights on the issue of notice under the reciprocal discovery statute and rights as to the denial of the motion to sever. For the record, the trial court noted that defense counsel had been afforded a chance to interview Dr. Currie and Dr. Pruitt. Ricarte has not shown how he was harmed by his counsel's decision not to question these witnesses. See *Ross*, 231 Ga. App. at 795 (1).

(c) Ricarte contends that his counsel continued to argue the defense of justification even after the trial court refused to charge the jury on that defense. The record belies this claim. As trial counsel explained, Ricarte's defense was a hybrid of necessity and justification. The trial court instructed the jury using the pattern charge but refused to charge the language excusable under the circumstances based on "reason and justice." See OCGA § 16-3-20 (6). As counsel

---

[1] James F. Brooks, M.D., a forensic psychiatrist who testified as a rebuttal witness, diagnosed Williams as being a polysubstance abuser and having an antisocial personality disorder. Dr. Brooks did not believe that Williams suffered from schizophrenia or had organic brain damage. In his judgment, Williams was legally responsible for his actions.

correctly pointed out that while the pattern charge does not recognize the common law origins of justification or necessity, he could and did argue these concepts to the jury.

(d) Ricarte complains that his counsel failed to offer adequate mitigating evidence during sentencing. Ricarte however had a lengthy criminal history including prior convictions for armed robbery, kidnapping, and theft. He was under federal parole supervision at the time of these offenses. On Ricarte's behalf, counsel directed the court's attention to Ricarte's age, 65 at the time of trial, and his alleged health issues. In arguing for the statutory minimum, counsel pointed out that Ricarte had assumed full responsibility for these crimes.

In any event, the overwhelming evidence of Ricarte's guilt forecloses the requisite showing of prejudice, even assuming arguendo that trial counsel's performance was somehow deficient. *Trammel v. State*, 265 Ga. 156 (1) (454 SE2d 501) (1995). The trial court's finding that Ricarte was not denied effective assistance of counsel was not clearly erroneous and must be affirmed. *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED APRIL 9, 2001.

*Jennifer Snyder-Surges*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.