## A02A1073. MURRAY v. THE STATE.
### (569 SE2d 636)

JOHNSON, Presiding Judge.

A jury found Andre Ladell Murray guilty of aggravated assault. He appeals, alleging the evidence is insufficient to support his conviction, the trial court erred in refusing to charge the jury on the lesser included offenses of simple assault and simple battery, and the trial court erred in allowing the state to introduce evidence previously excluded at the state's request. Because each of these enumerations of error lacks merit, we affirm Murray's conviction.

1. On appeal, we view the evidence in the light most favorable to support the jury's verdict, and we no longer presume that the appellant is innocent.[1] Moreover, we do not weigh the evidence or determine the credibility of the witnesses. Instead, we determine only if there is sufficient evidence from which a jury could have found the

appellant guilty beyond a reasonable doubt of the crime charged.

Viewed in this light, the evidence shows that on June 2, 1998, at about 10:00 p.m., the victim took a walk in his neighborhood. He was heading home when a gold Chevrolet passed him. The victim turned down the next street, and two men approached him quickly. One of the men pulled a gun and demanded: "Give me your money." Frightened, the victim stopped and explained that he had nothing but keys. The gunman's companion went behind the victim and frisked him.

The gunman remained in front of the victim, and the victim focused on him. The gunman's face was not covered by any mask. The victim noted the gunman's clothing and a gold medallion around his neck. According to the victim, the gunman was a young male, thin, and 5'7"-5'8" in height. The victim was especially struck that the gunman appeared calm. According to the victim, the gunman's "eyes were clear, his skin was clear, he had a nice haircut," and he did not look like a drug addict. The gunman was armed with a silver gun.

After the frisk confirmed that the victim did not have anything but his keys, the gunman moved off the sidewalk and into the street. The victim feared he would be shot, but instead the robbers fled. Two houses down the street, the victim observed them enter the same gold Chevrolet he had seen moments before the armed robbery attempt. The victim could see that the car was a gold Chevrolet Caprice, but could not see the license plate at that time. The victim did notice a symbol and mud flaps on the car.

Two days later, as the victim was putting his dry cleaning into his car, he spotted the gold car and recognized the driver as the gunman. The victim also noted that the gunman wore the gold medallion he had on at the time of the armed robbery attempt. This time, the victim was able to get a look at the car's license plate, which was a Suncoast dealer tag. The victim reported this to the police.

On June 15, Murray was stopped in a gold Chevrolet Caprice with a Suncoast dealer tag. Murray fit the physical description of the robber, and he was wearing a gold chain with a medallion. A detective was called to the scene and searched the car, but did not find a gun. On that same day, an officer presented the victim with a group of six pictures, and the victim picked out Murray's photograph. After seeing a photograph that included more of Murray's body, including the gold medallion, the victim testified that he was positive Murray was the robber. The victim also identified Murray in court as the gunman.

The officer also showed the victim photographs of a gold Chevrolet Caprice, a Suncoast dealer tag, and a gold medallion, all of which the victim identified as belonging to the gunman. In the photographs of the car, the victim also recognized the mud flaps and a symbol on the car. The victim noted that while the car type was popular, the

gold color, in his experience, was unique. The officer also testified that the color of the vehicle was "a very unique color . . . a very unusual color car." And, the tax commissioner testified that there were only 128 1986 Chevrolet Caprice Classics in the Chatham County tag system. He was unable, however, to say how many of the cars were gold, how many were metallic, how many had mud flaps, how many had a Suncoast tag, or how many had an emblem on the side.

Three days later, police executed a search warrant at Murray's home. During the search, police discovered the car, the tag, and the gold medallion. However, no gun was recovered.

Murray's mother testified that her son was on restriction for having stayed out beyond curfew and was prohibited from driving the car at the time of the robbery. She testified that the car was parked in front of their house, that Murray's father had the keys to the car, and that Murray was upstairs in his room.

Murray contends the evidence is insufficient to support his conviction for aggravated assault because the conviction is based on circumstantial evidence and because the jury acquitted him of possession of a firearm during the commission of a felony. We disagree.

The evidence in the record, when viewed in a light most favorable to support the verdict, is sufficient for a rational trier of fact to find Murray guilty beyond a reasonable doubt of aggravated assault. Contrary to Murray's argument, his conviction is not based on circumstantial evidence. Rather, his conviction is based on direct evidence, corroborated by circumstantial evidence. Here, the victim testified about his attack and specifically identified Murray as one of his attackers. This direct evidence was further corroborated by Murray's possession of an unusually colored car matching the victim's description and his possession of a medallion on a gold chain matching the victim's description.

As for Murray's claim that the jury's acquittal on the gun charge precludes his conviction for aggravated assault, we find no merit to this argument. Possession of a firearm is not an element of aggravated assault with intent to rob.[2] And, the aggravated assault count of the indictment did not allege that a gun was used. Moreover, there is no inconsistent verdict rule in Georgia.[3] Thus, the jury's decision on the gun charge does not alter the fact that the jury found sufficient evidence as to the aggravated assault charge, which is well supported by the record.

2. Murray contends the trial court erred in refusing to charge on simple assault and simple battery. We find no error. The evidence at

---

[2] See OCGA § 16-5-21 (a) (1); *Anderson v. State*, 238 Ga. App. 866, 870 (1) (519 SE2d 463) (1999).

[3] *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986).

trial shows that Murray pursued an alibi/mistaken identity defense. His defense was that he was at home because he was on restriction and not permitted to drive. Murray testified at trial that he was not in the area where the attempted robbery occurred and that he did not try to rob anyone. In short, the defense was that Murray committed no crime at all. Murray's attorney told the jury during closing argument: "We don't suggest to you for one second that what [the victim] describes as having happened didn't happen. No, that's not true. It happened. He's not in here telling you a lie about that. It happened. What we do contest is that — what's led to Mr. Murray sitting at that table. He was not the person there that night."

Based on the evidence in the record and Murray's own defense, either Murray committed the aggravated assault with intent to rob or he committed no crime at all. Even Murray's attorney admitted in closing argument that the victim "rightfully and justifiably was terrified. His knees were shaking, his voice was trembling. He thought he was going to die." The trial court did not err in refusing to charge the jury on the lesser included offenses of simple assault and simple battery.[4]

The fact that Murray was acquitted of the gun charge has no bearing on whether the trial judge should have charged simple assault and simple battery in connection with aggravated assault. As we held in Division 1, possession of a firearm is not an element of aggravated assault with intent to rob. This enumeration of error lacks merit.

3. Murray asserts the trial court erred in admitting his videotaped interview at trial because it contains inadmissible hearsay and is burden-shifting. The record shows that the state moved to prohibit introduction of the videotaped interview between Murray and the police, arguing that the videotape was inadmissible as unreliable and self-serving hearsay. The trial court granted the state's motion. Throughout the trial, Murray sought admission of the videotaped interview, but was not permitted to introduce the videotape. After the defense rested, the state moved to admit the videotaped interview, arguing that the videotape was relevant and admissible to rebut Murray's alibi defense because Murray does not mention this defense on the videotape. The trial court granted the state's motion, and Murray objected.

Murray first contends that the videotaped interview was inadmissible because it contains hearsay and attempts to impeach alibi witnesses with out-of-court statements by a declarant who has

---

[4] See *Van Doran v. State*, 244 Ga. App. 496 (536 SE2d 163) (2000); *Huckeba v. State*, 217 Ga. App. 472, 475-476 (3) (458 SE2d 131) (1995).

not testified at trial. We find no merit in this argument. A voluntary incriminating statement or confession by a criminal defendant is admissible as an exception to the hearsay rule.[5]

Murray next argues that by admitting the videotape into evidence the trial court shifted the burden of proof from the state to Murray because the videotape creates a presumption that the alibi witnesses were lying and because Murray did not take the stand and explain why he failed to mention the alibi defense. According to Murray, the admission of the videotape either forced him to testify to explain the omission or left unrebutted the presumption that the alibi witnesses were lying. We find no merit in this argument.

The record shows that Murray did not testify, and the trial court expressly instructed the jury that "there is no burden of proof whatever on the defendant and the burden never shifts over to the defendant to require him to prove his innocence." Additionally, the trial court charged the jury:

[T]he defendant in a criminal case is under no duty to present any evidence tending to prove his innocence and he is not required to take the stand and testify in the case. If the defendant elects not to testify, then no inference hurtful, harmful, or adverse to the defendant shall be drawn by the jury, nor shall such fact be held against the defendant in any way.

Moreover, contrary to Murray's assertion that he was burdened with the need to explain why "he never discussed with the police the fact he was on restriction," a police officer testified at trial that about an hour after the videotaped interview, Murray called to report that "my mother reminded me I was in trouble on the previous day and on that day I couldn't go anywhere."

As for Murray's claim that the videotape had no purpose because the trial court did not charge the jury on the defense of alibi, we note that Murray withdrew his alibi charge request and specifically objected to the trial court instructing the jury on the defense. A defendant may not profit from errors he induces.[6] The trial court did not err in permitting the state to introduce Murray's videotaped interview as rebuttal evidence.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

---

[5] *Shields v. State*, 223 Ga. App. 169, 170 (477 SE2d 342) (1996); *Moak v. State*, 222 Ga. App. 36, 41 (5) (473 SE2d 576) (1996).

[6] See *DeLoach v. State*, 272 Ga. 890, 892 (2) (536 SE2d 153) (2000).

*Martin G. Hilliard,* for appellant.
*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney,* for appellee.