## A00A2246. WILLIAMS v. THE STATE.
(578 SE2d 128)

RUFFIN, Presiding Judge.

A jury found Raymond Williams guilty of armed robbery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Williams appeals, asserting numerous errors.[1] Finding Williams' assertions meritless, we affirm.

---

[7] *Ponder v. State*, 260 Ga. 840, 841-842 (1) (400 SE2d 922) (1991).

[1] Williams initially appealed to the Supreme Court, which transferred his case to this Court. Williams subsequently filed a motion for reconsideration in the Supreme Court, challenging the transfer. The Supreme Court then transmitted Williams' motion to this Court.

1. On appeal from a criminal conviction, Williams no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict.[2] We neither weigh the evidence nor determine witness credibility, but merely ascertain whether the evidence is sufficient to establish guilt beyond a reasonable doubt.[3]

So viewed, the evidence shows that on April 14, 1997, three armed men entered the All Cash Pawnshop. One of the men pulled a gun on Melda Samples, the assistant manager, and ordered her not to move. Another man pointed a gun at Frederick Schmidt, the manager. The third man, identified as Williams at trial, used the butt of his pistol to break into a glass gun case, cutting his hand in the process. The men took money, guns, and jewelry before fleeing the store and driving away in a car driven by Jamaine Burroughs.

Following the robbery, the police received information that led them to suspect Williams was one of the robbers. During a photo lineup, Samples identified Williams as a possible perpetrator. Detective Robert Kendrick, who brought Williams to the police station, discovered that Williams had cuts on his hand consistent with breaking the gun case. At the crime scene, the police collected blood samples, and a DNA test showed that the blood was that of "either Raymond Williams or his identical twin."

Williams was charged with armed robbery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Burroughs, the driver of the car, also was charged with armed robbery. Burroughs evidently reached a plea agreement with the State and testified against Williams. According to Burroughs, he was approached by Williams and the two other perpetrators to give them a ride "to do a lick," which means to commit a robbery. Burroughs testified that he drove the men to the pawnshop. After the robbery, Burroughs drove the men back to his girlfriend's house, where all four men divided the spoils. Burroughs' girlfriend also testified, corroborating that Williams and the others arrived at her house with "money, dollar bills, guns, [and] jewelry."

Based upon this and other evidence, the jury found Williams guilty of armed robbery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.[4] On appeal, Williams asserts that the evidence was insufficient to sup-

---

In so doing, the Supreme Court implicitly denied the motion. As Williams has filed no motion for reconsideration in this Court on this issue, we do not address his arguments in this regard.

[2] See *Mann v. State*, 254 Ga. App. 869 (563 SE2d 924) (2002).

[3] See id.

[4] In a bifurcated proceeding, the State presented evidence that Williams was a convicted felon prior to April 14, 1997.

port the verdicts. We disagree. Given the eyewitness testimony, the accomplice's testimony, and the DNA evidence, the evidence of Williams' guilt is nothing short of overwhelming. Accordingly, this enumeration of error lacks merit.[5]

2. Williams argues that the trial court erred in limiting his ability to question prospective jurors during voir dire. Evidently, Williams wanted to question jurors regarding their knowledge of the O. J. Simpson trial and "the DNA analysis that was done in that particular case." The State requested that the trial court exclude any such voir dire questions as irrelevant. The trial court granted the State's request, precluding any mention of the O. J. Simpson case.

A trial court exercises its discretion when limiting those questions that may be asked of prospective jurors during voir dire, and we will not interfere with such discretion absent manifest abuse.[6] The purpose of voir dire is to "allow both parties an opportunity to ascertain the ability of the prospective jurors to decide the case on its merits, with objectivity and freedom from bias and prior inclination."[7] Here, it does not appear that the trial court limited Williams' ability to question jurors regarding DNA evidence, generally. The trial court merely prohibited Williams from addressing the issue in the context of the O. J. Simpson trial. Under these circumstances, we find no abuse of the trial court's discretion.[8]

3. Williams contends that the trial court erred in failing to grant his motion to dismiss. In his motion, Williams argued that his equal protection rights were violated because he was not permitted to present evidence before the grand jury, whereas certain public officials who are accused of criminal conduct are afforded such right.[9] This argument, however, has been rejected by our Supreme Court.[10] It follows that the trial court did not err in refusing to grant Williams' motion to dismiss on this basis.

4. In connection with the charge that Williams was a convicted felon in possession of a firearm, the State tendered a copy of Williams' prior conviction. Williams, who pled guilty, signed the indictment. At trial, however, Williams argued that the prior conviction involved a different Raymond Williams. To prove that the two Ray-

---

[5] See *Thorne v. State*, 246 Ga. App. 741 (1) (542 SE2d 157) (2000); *Holloway v. State*, 245 Ga. App. 510, 511-512 (1) (537 SE2d 708) (2000); *Bearden v. State*, 241 Ga. App. 842, 843-844 (1) (528 SE2d 275) (2000).

[6] See *Ganas v. State*, 245 Ga. App. 645, 647 (2) (537 SE2d 758) (2000).

[7] (Punctuation omitted.) *Anderson v. State*, 236 Ga. App. 679, 682 (3) (513 SE2d 235) (1999).

[8] See *Jenkins v. State*, 269 Ga. 282, 290-291 (12) (498 SE2d 502) (1998); *Raulerson v. State*, 268 Ga. 623, 630 (5) (491 SE2d 791) (1997).

[9] See OCGA §§ 17-7-52; 45-11-4.

[10] See *Lewis v. State*, 255 Ga. 101, 106 (4) (335 SE2d 560) (1985).

mond Williams were one and the same, the State tendered a copy of Williams' arraignment form in the robbery case for which Williams was on trial. Detective Kendrick testified that Williams had signed the form in his presence. The trial court then admitted the signed arraignment form. In two enumerations of error, Williams challenges use of his signature at trial.

(a) Williams asserts that the trial court should not have admitted the arraignment form, which he was compelled to sign. According to Williams, the introduction of the writing exemplar violates Georgia's prohibition against self-incrimination. We disagree. "While a defendant cannot be compelled to produce a handwriting exemplar, it is not error for the State to use as a handwriting exemplar, a voluntary writing by the defendant."[11] Moreover, the routine collection of a signature during pre-trial procedures does not constitute compelled self-incrimination.[12] Here, the record simply does not support Williams' contention that he was *forced* to sign the arraignment form. Accordingly, we find no error in the admission of Williams' signature on this basis.

(b) Williams also argues that the trial court erred in allowing Detective Kendrick to compare the signature on the arraignment form to the signature on the indictment from the prior conviction. Kendrick testified that the two signatures appeared to be the same. Williams essentially maintains that only an expert witness should have been permitted to draw such comparison. The trial court, however, permitted Detective Kendrick to testify as a lay witness. OCGA § 24-7-6 provides that

[p]roof of handwriting may be resorted to in the absence of direct evidence of execution. In such case, any witness who shall swear that he knows or would recognize the handwriting shall be competent to testify as to his belief. The source of his knowledge shall be a question for investigation and shall go entirely to the credit and weight of his evidence.

And "[a] nonexpert witness may identify the handwriting of a particular individual (as he would identify the individual himself), provided he knows the handwriting or is so familiar with it that he would recognize it."[13] In this case, Detective Kendrick gained knowledge of Williams' signature by witnessing Williams sign the arraignment form. Accordingly, Detective Kendrick was competent to iden-

---

[11] *Thomas v. State*, 274 Ga. 156, 162 (7) (549 SE2d 359) (2001).

[12] See id. (defendant's signature on fingerprint card).

[13] (Punctuation omitted.) *Quick v. State*, 256 Ga. 780, 783 (4) (353 SE2d 497) (1987).

tify Williams' signature on the indictment from the prior conviction.[14] The weight to be given to Detective Kendrick's testimony was solely a matter for the jury to resolve.[15]

5. Williams contends that the trial court erred in improperly limiting his closing argument. Specifically, Williams maintains that the trial court curtailed his ability to argue that Burroughs, who drove the getaway car, received a lenient sentence.

Recently, this Court has ruled that a defendant has the right to thoroughly cross-examine a testifying accomplice regarding any leniency granted in sentencing to establish bias on the part of that accomplice.[16] During Burroughs' cross-examination, the trial court permitted Williams to inquire into the sentence Burroughs was given in exchange for his testimony. And, during closing arguments, Williams reiterated the sentence that Burroughs faced. Although the trial court precluded Williams from further argument regarding penalties, we fail to see any harm as the jurors were, in fact, aware of Burroughs' sentence.[17]

6. Williams claims that the trial court erred in refusing to give his requested jury charges on theft by intimidation and theft by taking as lesser included offenses of armed robbery. As a rule, the trial court is required to give a requested charge on a lesser included offense if there is any evidence to support the finding that the defendant committed the lesser offense.[18] A corollary to this rule is that a trial court does not err in refusing to charge the jury on the lesser offense where the evidence establishes all of the elements of the greater offense and there is no evidence of the lesser offense.[19] In this case, the evidence demonstrates that Williams and his two accomplices were armed with guns when they robbed the store. Indeed, Williams' two accomplices pointed their guns at the two store employees during the robbery. Where, as here, the evidence shows the completed offense of armed robbery, we find no error in the trial court's refusal to instruct the jury on the lesser included offenses of robbery by intimidation or theft by taking.[20]

7. In ten enumerations of error, Williams contends that he received ineffective assistance of trial counsel. "To establish ineffec-

---

[14] See id.

[15] See *Flanders v. State*, 217 Ga. App. 73, 74 (2) (456 SE2d 604) (1995).

[16] See *Vogleson v. State*, 250 Ga. App. 555, 557-560 (1) (552 SE2d 513) (2001), aff'd, *State v. Vogleson*, 275 Ga. 637 (571 SE2d 752) (2002); *Perez v. State*, 254 Ga. App. 872, 873 (1) (564 SE2d 208) (2002).

[17] See *Hodo v. State*, 272 Ga. 272, 275 (5) (528 SE2d 250) (2000) (error in limiting closing argument subject to harmless error analysis).

[18] See *Cook v. State*, 252 Ga. App. 86, 88 (3) (555 SE2d 759) (2001).

[19] See id.

[20] See *Smith v. State*, 252 Ga. App. 552, 554 (556 SE2d 826) (2001).

tiveness, [Williams] must show not only that his trial counsel's performance was deficient, but also that the deficiency prejudiced him."[21] If Williams is unable to satisfy either prong of this test, his claim of ineffectiveness must fail.[22] Given the overwhelming evidence of Williams' guilt, it is virtually impossible for him to establish prejudice. Nonetheless, to the extent that any alleged error may have affected the outcome, we will address Williams' claims.

(a) Williams asserts that his trial counsel was ineffective for failing to petition the trial court for funds with which to retain a DNA expert. At the hearing on Williams' motion for new trial, Williams' attorney testified that he decided not to seek funding for a DNA expert because he would be required to provide the results of any subsequent DNA analysis to the State. Such decision was clearly tactical, which does not equate to ineffective assistance.[23]

(b) Williams argues that his trial attorney was ineffective for failing to object to evidence that the two nontestifying accomplices pled guilty. According to Williams' attorney, however, he purposely introduced evidence of the accomplices' guilty pleas to question the State's failure to call the accomplices to testify against Williams. Thus, again, trial counsel's decision was tactical, and "[d]ecisions regarding matters of trial tactics and strategy, wise or unwise, generally do not amount to ineffective assistance."[24]

(c) Williams asserts that his trial attorney was ineffective in permitting two State witnesses to remain in the courtroom, despite invoking the rule of sequestration. Evidently, the crime was investigated by two separate agencies, and Williams' attorney agreed to let a representative from each agency assist with the presentation of evidence. In his brief, Williams makes no effort to demonstrate how he was prejudiced by his attorney's conduct. Accordingly, Williams presents no basis for reversal.[25]

(d) According to Williams, his trial counsel rendered ineffective assistance in failing to object to the following preliminary instruction given by the trial court: "[T]he State will present their case. Then the Defense, if they like, can put up their evidence. They don't have to. Remember that." Although Williams' argument in this regard is not entirely clear, it appears that he believes the trial court's statement was somehow burden-shifting. Pretermitting whether the statement was burden-shifting or, perhaps, confusing, we find no basis for

---

[21] *Ricarte v. State,* 249 Ga. App. 50, 54 (4) (547 SE2d 703) (2001).
[22] See id.
[23] See *Coney v. State,* 209 Ga. App. 9, 11 (1) (432 SE2d 812) (1993); see also *Taylor v. State,* 248 Ga. App. 715, 717 (5) (548 SE2d 414) (2001).
[24] *Benefield v. State,* 253 Ga. App. 14, 15 (3) (557 SE2d 476) (2001).
[25] See *Jackson v. State,* 252 Ga. App. 157, 163-164 (6) (c) (555 SE2d 835) (2001).

reversal. In its general charge, the trial court expressly instructed jurors that the State had the burden of proving every material allegation in the indictment and that the burden *never* shifted to Williams. As we find no error in the trial court's overall instruction, this claim of error lacks merit.[26]

(e) Williams contends that his trial counsel was ineffective in failing to object to the State's (1) improper use of argument during opening statements; (2) improper rehabilitation of witnesses; (3) improper bolstering of witnesses; and (4) improper use of expert testimony from a lay witness. However, Williams makes no attempt to demonstrate prejudice with respect to these alleged errors, which eviscerates these claims.[27]

(f) Williams maintains that his trial counsel was ineffective for failing to present evidence during the defense's case-in-chief.[28] In his brief, however, Williams does not cite to any evidence that might have supported a defense. Indeed, given the overwhelming evidence of Williams' guilt, it is unlikely that any evidence would have altered the outcome of the trial. Thus, this allegation of error is meritless.[29]

(g) In his final enumeration of error, Williams asserts that his attorney was ineffective for failing "to seek a mistrial upon an inappropriate jury inquiry." During deliberations, the jurors evidently inquired about Williams' criminal record, and they were told that the issue was not before them.[30] According to Williams, the jurors inferred from this response that he had a criminal past. Thus, Williams contends, his attorney should have moved for a mistrial. This contention is patently meritless. The response to the jurors' question was, at best, accurate and, at worst, innocuous. In any event, we fail to see how such comment could have contributed to the outcome of the case. And, having failed to establish prejudice, Williams' claim of ineffectiveness must fail.[31]

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED FEBRUARY 5, 2003 —
RECONSIDERATION DENIED FEBRUARY 19, 2003.

*Thomas J. Gustinella*, for appellant.

---

[26] See *Murray v. State*, 256 Ga. App. 736, 739-740 (3) (569 SE2d 636) (2002); *Pryor v. State*, 258 Ga. 792, 793 (2) (375 SE2d 33) (1989).

[27] See *Jackson*, supra.

[28] Williams' attorney testified that he was unaware of any exculpatory evidence and that he counseled his client against taking the stand to avoid impeachment.

[29] See *Blake v. State*, 273 Ga. 447, 450 (5) (542 SE2d 492) (2001).

[30] This colloquy was not recorded, but Williams' attorney testified regarding the exchange during the hearing on Williams' motion for new trial.

[31] See *Ricarte*, supra.

*Spencer Lawton, Jr., District Attorney, Lori T. Loncon, Assistant District Attorney*, for appellee.