A07A1004. ROLLINS, INC. et al. v. WARREN et al.
(653 SE2d 794)

BERNES, Judge.

Appellees Ernest W. Warren and Dolores G. Warren brought the instant class action against appellants Rollins, Inc. and Orkin Exterminating Company, Inc. (collectively, "Orkin") alleging that Orkin failed to provide termite reinspections that it had contractually promised to its customers. According to the Warrens, Orkin fraudulently induced them to enter a renewable contract for subterranean termite treatment services, failed to fulfill its contractual obligation to properly reinspect and retreat their home for termites, and concealed this lack of proper reinspection and retreatment through a pattern of forgery and fraud. The Warrens further allege that Orkin failed to properly reinspect the property of other Orkin customers throughout Georgia and engaged in a pattern of fraud and forgery in order to cover up this failure. The trial court subsequently granted the Warrens' motion for class certification. Alleging multiple errors by the trial court, Orkin now appeals. As explained below, we conclude that the trial court abused its discretion in concluding that common issues of law and fact predominate over the individual issues

that would need to be resolved before each class member could recover against Orkin for improper termite reinspections. Therefore, we reverse.[1]

The record reflects that Orkin is a pest control company that provides services to customers throughout Georgia. As part of these services, Orkin commonly enters into subterranean termite contracts with Georgia consumers under which Orkin promises to treat the consumers' property for subterranean termites in return for an initial fee. Under their terms, the termite contracts are renewable on a yearly basis in return for an annual payment. According to the class action complaint, Orkin customers are led to believe from the language of the termite contracts, from a written "Guarantee" incorporated into each contract, and from print and broadcast advertising that if they renew their contracts, Orkin will annually reinspect their property and ensure protection from termites. The complaint alleges that Orkin instead has a pattern and practice of collecting renewal fees for annual reinspections that were never performed or were worthless. The complaint further alleges that Orkin has attempted to conceal its failure to provide adequate and proper annual reinspections through a pattern and practice of forging reinspection records. Finally, the complaint alleges that Orkin has attempted to sidestep its contractual obligations by invoking disclaimers that are purposefully confusing and deceptive and that are intentionally made to appear inconspicuous in the termite contracts.

In light of these allegations, the Warrens brought the instant action against Orkin individually and on behalf of all similarly situated Orkin customers in Georgia. They sought compensatory and treble damages, as well as injunctive and declaratory relief. Based on their allegation that Orkin had failed to provide adequate and proper annual reinspections to its Georgia customers, the Warrens asserted monetary damages claims for breach of contract; breach of the implied covenant of good faith and fair dealing; unjust enrichment/money had and received; professional negligence; fraud; and violation of the Georgia Racketeer Influenced and Corrupt Organizations Act, OCGA § 16-14-1 et seq. They also sought an injunction to prevent Orkin from further disseminating print and broadcast advertisements that allegedly violate the Georgia Uniform Deceptive Trade Practices Act,

---

[1] Courts in two other jurisdictions have likewise concluded that class certification is inappropriate for claims predicated on termite reinspection abuse. See *Cutler v. Orkin Exterminating Co.*, Final Judgment and Order, No. 96-184-H (Ala. Cir. Ct. 2004) (decertifying damages class in reinspection abuse case "because common issues do not predominate over the individual issues"); *Rollins, Inc. v. Butland*, 951 S2d 860 (Fla. App. 2006), review denied, *Butland v. Rollins, Inc.*, 962 S2d 335 (Fla. 2007) (reversing trial court's certification of damages class and equitable relief class in reinspection abuse case).

OCGA § 10-1-370 et seq. Finally, the Warrens requested "other declaratory and injunctive relief," including a declaration that the disclaimers in Orkin's termite contracts that restrict or eliminate Orkin's duty to repair property reinfested with termites are unenforceable or voidable, and an injunction compelling Orkin to provide a complete and proper reinspection to each of its Georgia customers.

The Warrens thereafter moved for class certification on their claims. In their motion, the Warrens stated that they were not seeking class certification of their claims for property damage caused by termite reinfestations; rather, they sought certification under OCGA § 9-11-23 (b) (3) ("Rule 23") "only for damages in the amount of the reinspection/renewal fees paid by Class Members for services not performed." The Warrens also sought certification of their claims for declaratory and injunctive relief under Rule 23 (b) (2).

After conducting a hearing, the trial court entered an order granting class certification of the Warrens' monetary damages claims under Rule 23 (b) (3) and their declaratory and injunctive relief claims under Rule 23 (b) (2). The trial court certified a class, potentially composed of "thousands" of Orkin customers throughout Georgia, defined as follows:

> All persons or entities who were induced to and entered into a Standard Termite Contract similar to the Warrens' Standard Termite Contract, during the Relevant Time Period [from October 16, 1995 to August 18, 2006], who were charged by Orkin for services not rendered; and all persons or entities who paid renewals on Standard Termite Contracts, during the Relevant Time Period, for treatments, inspections, and reinspections, who were charged by Orkin for services not rendered.

Specifically excluded from the class were Orkin "and any person, firm, trust, corporation or other entity affiliated with [Orkin]" and "[m]embers of the judiciary of the State of Georgia." This appeal followed.

1. *Monetary Damages Claims.* Orkin contends that the trial court abused its discretion in certifying the monetary damages claims under Rule 23 (b) (3) because individual factual issues predominate over issues common to all class members. We agree.

Before claims can be certified for class adjudication under Rule 23 (b) (3), the plaintiff must show, among other things, "that there are questions of law and fact common to the class members which predominate over any individual questions." *Griffin Indus. v. Green,* 280 Ga. App. 858, 859 (635 SE2d 231) (2006).

> Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief. Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23 (b) (3).

(Citation and punctuation omitted.) *Klay v. Humana, Inc.*, 382 F3d 1241, 1255 (II) (B) (11th Cir. 2004).[2]

A trial court's grant or denial of class certification is subject to an abuse of discretion standard of review. See *UNUM Life Ins. Co. of America v. Crutchfield*, 256 Ga. App. 582 (568 SE2d 767) (2002); *Trend Star Continental v. Branham*, 220 Ga. App. 781, 782 (1) (469 SE2d 750) (1996). Nevertheless, the trial court's discretion is not unlimited, and the grant of class certification under Rule 23 (b) (3) will be reversed where it is clear from the record that the predominance requirement has not been met, rendering a trial of the case on a class-wide basis unmanageable. See *Stevens v. Thomas*, 257 Ga. 645, 648-650 (2) (361 SE2d 800) (1987); *Tanner v. Brasher*, 254 Ga. 41, 44-45 (2) (326 SE2d 218) (1985); *Life Ins. Co. of Ga. v. Meeks*, 274 Ga. App. 212, 217 (3) (a) (617 SE2d 179) (2005); *Aetna Cas. &c. Co. v. Cantrell*, 197 Ga. App. 672, 673-674 (2) (399 SE2d 237) (1990).

With these principles in mind, we turn to the present case. In its order granting class certification, the trial court concluded that common questions of law and fact predominate because "[t]he contractual rights the Warrens seek to enforce are common to all class members, and the Warrens seek common relief on behalf of all class members." In reaching this conclusion, however, the trial court did not go on to heed the Supreme Court of Georgia's admonition that "a common question is not enough when the *answer* may vary with each class member and is determinative of whether the member is properly part of the class." (Emphasis in original.) *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 129 (4) (610 SE2d 529) (2005). Thus, even if members of a proposed class seek to enforce the same contractual right and to obtain the same relief against a defendant, the predominance requirement is not met when the *answer* to the question of whether the defendant breached its contractual obligations will

---

[2] In addressing class certification issues, Georgia courts have relied on federal cases construing Federal Rule of Civil Procedure 23 as persuasive authority. See *State Farm &c. Ins. Co. v. Mabry*, 274 Ga. 498, 499 (1) (556 SE2d 114) (2001); *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 953 (1) (216 SE2d 897) (1975).

require a highly individualized, case-by-case determination as to each putative class member. See *Meeks*, 274 Ga. App. at 217 (3) (a); *Cantrell*, 197 Ga. App. at 673-674 (2). See also *Parke v. First Reliance &c. Ins. Co.*, 368 F3d 999, 1004-1005 (I) (8th Cir. 2004); *Moore v. American Federation of Television & Radio Artists*, 216 F3d 1236, 1241-1242 (II) (A) (11th Cir. 2000); *Pastor v. State Farm &c. Ins. Co.*, 2005 U. S. Dist. LEXIS 22338 *21 (1) (N.D. Ill. 2005). Under such circumstances, determining whether a particular individual is even a member of the putative class would require a separate mini-trial, rendering the entire process unwieldy. Hence, even if the termite contracts at issue arguably placed a uniform duty upon Orkin to provide all of its customers with annual reinspections,[3] individual issues nonetheless predominate if Orkin's liability on each customer's reinspection claim must be determined on a highly individualized basis. That is the case here for four primary reasons.

First, Orkin sought and obtained certification of a class of all Orkin customers in Georgia who were charged for annual termite reinspection "services not rendered." It is clear from Orkin's complaint and briefing that "services not rendered" was meant to extend beyond those cases where Orkin allegedly performed no annual reinspection at all. Rather, it also was meant to include cases where some type of reinspection service was performed, but the service was not "adequate and proper" or was "worthless." The trial court adopted this broad class definition advocated by Orkin, noting in its order that the common questions in the case included "whether Orkin failed to perform *adequate* reinspections." (Emphasis supplied.)

But, the question of whether Orkin provided inadequate or worthless annual reinspections clearly is a highly individualized inquiry, since adequacy would depend on what a particular Orkin inspector did or did not do at a particular customer's property and on the thoroughness of that inspection. The allegations of the class representatives, the Warrens, illustrate this point. Ms. Warren testified in her deposition that Orkin performed reinspections of her home in March and November 2000. In order to show that these reinspections were inadequate and worthless, the Warrens point to documentary evidence reflecting inspections by the Georgia Department of Agriculture performed at their home a few months later that concluded that there were areas of termite infestation requiring retreatment. It is this type of individualized evidence that would be necessary on a case-by-case basis to establish the inadequacy or

---

[3] Orkin contends that the termite contracts among putative class members are not uniform and instead contain different language regarding the duty to annually reinspect, the terms of the termite guarantees, and whether arbitration was required.

worthlessness of a given reinspection and that renders class certification inappropriate. See *Meeks*, 274 Ga. App. at 217 (3) (a) (resolution of whether each class member received payment of the "reasonable and customary charge" required a separate application of the contract to each class member, thereby precluding class certification); *Cantrell*, 197 Ga. App. at 673-674 (2) (class certification improper where each class member's specific claim for no-fault insurance benefits would have to be assessed individually).

Second, central to the class claim that Orkin failed to provide proper annual reinspections is the allegation that the termite inspection records that purportedly reflect such an inspection in many instances contain forged customer signatures. Again, however, whether a signature was forged as to a particular customer would require individualized evidence to prove the lack of authenticity of the signature. In order to prove at trial whether a customer signature was forged, there would have to be testimony from the customer, testimony from someone familiar with the customer's signature, testimony from a handwriting expert, or an individualized comparison of signatures in the specific customer's termite file by the jury. See OCGA § 24-7-6; *McMillan v. State*, 266 Ga. App. 729, 733 (1) (c) (598 SE2d 17) (2004), overruled in part on other grounds, *Glidewell v. State*, 279 Ga. App. 114 (630 SE2d 621) (2006); *Williams v. State*, 259 Ga. App. 742, 745-746 (4) (b) (578 SE2d 128) (2003). This need for individualized evidence as to each class member further illustrates why class certification is inappropriate. See *Meeks*, 274 Ga. App. at 217 (3) (a); *Cantrell*, 197 Ga. App. at 673-674 (2).

Third, the Orkin termite contracts placed affirmative duties upon each of Orkin's customers, compliance with which would have to be assessed as to each individual customer before his or her membership in the putative class could be established. For example, the termite contracts require that the customer make his or her home or premises available for Orkin's reinspection. Each Orkin customer thus would be required to prove at trial his or her compliance with such affirmative obligations before Orkin's liability could be established and membership in the class could be demonstrated, again counseling against class certification. See *Carnett's, Inc.*, 279 Ga. at 128-129 (4) (concluding that whether the established business relationship exemption to liability under the Telephone Consumer Protection Act applied would have to be assessed as to each class member, causing individual questions to predominate). See also *Rollins, Inc. v. Butland*, 951 S2d 860, 877 (V) (B) (2) (c) (Fla. App. 2006) (reversing trial court's grant of class certification in case for reinspection abuse brought against Orkin based in part on the conclusion that "[e]ach

class member would be required to prove at trial his or her performance" of the obligations placed in the termite contracts on customers).

Fourth and finally, in a properly certified damages class action, proof of the class representatives' claims will necessarily prove one or more elements of the class members' claims. See, e.g., *Duffy v. Landings Assn.*, 254 Ga. App. 506, 508-509 (1) (563 SE2d 174) (2002). See also *Butland*, 951 S2d at 870 (V) (B) (1) (c) (1). That is not true here. Whether Orkin forged the Warrens' signatures on reinspection records and failed to perform adequate annual reinspections of their home is a highly particularized and fact-specific inquiry. The Warrens support their individual allegations against Orkin with Ms. Warren's deposition testimony about what occurred at her home and her personal experiences with Orkin salesmen and inspectors occurring over more than ten years; the business records from the Warrens' file with Orkin; and reports of termite inspections of their home conducted by the Georgia Department of Agriculture. As such, it is clear that resolution of the Warrens' individual claims would not tell a jury whether any other class member had reinspection records forged or received inadequate reinspection services.

The Warrens attempt to surmount these problems with proving liability on a class-wide basis by relying on four types of generalized evidence. First, the Warrens rely upon a survey conducted by their experts that sampled 389 termite customer files and reviewed them for the completeness of their documentation. According to the Warrens, the incomplete and missing documentation in the files serves as probative evidence of Orkin's alleged failure to provide adequate annual reinspection services on a class-wide basis. Second, the Warrens rely upon testimony from a human resources management expert that the unique structure of Orkin's compensation system for sales inspectors encouraged reinspection abuse. Third, the Warrens rely upon Orkin's internal policy documents in an effort to show that Orkin had a reinspection problem of which it was aware. Fourth, the Warrens rely upon the testimony of Orkin employees from Alabama and Florida, which they argue shows that Orkin has a recurring, systemic problem in the region with failing to provide annual reinspections and with the forging of records to cover up this fact.

We conclude that the Warrens' generalized evidence does not cure the need for highly individualized evidence in this case. Even assuming that the generalized evidence demonstrates that Orkin has a widespread problem with reinspection abuse, it does not follow that this evidence can establish that Orkin breached its duty to adequately reinspect the property of any given proposed member of the class. Put another way, the generalized evidence offered by the Warrens would not resolve whether any *particular* Orkin customer

had forged reinspection records in his or her file or failed to receive proper annual reinspection services for his or her property. For example, the statistical evidence upon which the Warrens and the trial court placed heavy emphasis reflected that the 389 sampled customer termite files were incomplete between 66 and 98 percent of the time, depending on varying standards of incompleteness used by the Warrens' experts. But, even if this statistical data is accurate, a general finding of incompleteness in 66 to 98 percent of the sampled documentation does not answer the question of whether any one particular Orkin customer in Georgia out of thousands failed to receive adequate reinspection services in one or more of the approximately eleven years covered by the class period.

Indeed, that question cannot be answered through Orkin's statistical or other generalized evidence. Rather, as the Warrens' claims demonstrate, it would require an individualized, fact-specific inquiry in each case, involving the testimony of the individual customer and the particular Orkin employees who inspected that customer's property over the years in which the customer had a contract with Orkin, a review of the computer and business records for each specific customer, and — in situations where services were performed but allegedly were inadequate or worthless — expert testimony, state agency inspection reports, or other documentary evidence establishing the inadequacy of the services rendered.[4] Furthermore, the statistical and other generalized evidence presented by the Warrens would not address or resolve whether each class member fulfilled the affirmative contractual obligations placed upon him or her by the termite contract, without which Orkin could not be held liable for not providing proper annual reinspection services. That issue, central to a finding of liability and membership in the class, would have to be resolved on a case-by-case basis.

For these combined reasons, the trial court abused its discretion in granting class certification under Rule 23 (b) (3). See *Rutstein v. Avis Rent-A-Car Systems*, 211 F3d 1228, 1235-1236 (III) (A) (11th Cir. 2000) (individual issues predominated when each putative class member would have to present highly individualized proof of the defendant's liability, given that the plaintiffs' generalized pattern

---

[4] The Warrens' own termite file illustrates why individualized evidence would be necessary in this case, despite the Warrens' statistical survey. A reinspection service ticket from 1995 does not include the signature of either Mr. or Ms. Warren and thus would have been labeled as an incomplete ticket under the standards used by the Warrens' experts in reviewing the termite files. Significantly, however, the ticket also contains a handwritten note by the Orkin technician in the "Comments" section indicating that the Warrens had left the basement door open for him and that the termite inspection had revealed no problems. Determining in a fair and objective manner whether or not a reinspection took place in a given year would require this type of individualized evaluation of each customer's termite file.

and practice evidence could not establish the defendant's liability as to any one particular class member). Where, as here, "the issue of liability vel non[ ] turn[s] upon highly individualized facts," the Warrens cannot meet the predominance requirement of Rule 23 (b) (3). (Citation and punctuation omitted.) Id. See also *Rodriguez v. Ford Motor Credit Co.*, 2002 U. S. Dist. LEXIS 7280 at \*15-16 (I) (B) (3) (N.D. Ill. 2002); *In re Ford Motor Co.*, 194 FRD 484, 491 (III) (D. N.J. 2000). "Assuming that there are other persons who suffered [reinspection abuse other than the Warrens], their claims must be assessed on an individual basis. . . . A class action is particularly inappropriate under such circumstances." *Williams v. Cox Enterprises*, 159 Ga. App. 333, 336 (5) (283 SE2d 367) (1981). See *Butland*, 951 S2d at 869-881 (V) (B); *Meeks*, 274 Ga. App. at 217 (3) (a); *Cantrell*, 197 Ga. App. at 673-674 (2).

2. *Declaratory and Injunctive Relief Claims.* Orkin further contends that the trial court abused its discretion in certifying a class for declaratory and injunctive relief under Rule 23 (b) (2). Again, we agree.

Rule 23 (b) (2) allows for class certification if the four requirements of numerosity, commonality, typicality, and adequacy of representation set out in Rule 23 (a) have been met, and if "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Notably, however, certification under Rule 23 (b) (2) is inappropriate if the predominate relief sought in the action is monetary damages. See *Cooper v. Southern Co.*, 390 F3d 695, 720-721 (II) (C) (11th Cir. 2004); *Allison v. Citgo Petroleum Corp.*, 151 F3d 402, 411 (V) (A) (5th Cir. 1998); *Colomar v. Mercy Hosp.*, 242 FRD 671, 682 (C) (S.D. Fla. 2007); *Dunlap v. Friedman's, Inc.*, 363 BR 629, 637 (B) (Bankr. S.D. Ga. 2007); *Butland*, 951 S2d at 882 (V) (C) (3). "[M]onetary relief predominates in . . . [the] action[ ] unless it is incidental to requested injunctive or declaratory relief." *Allison*, 151 F3d at 415 (V) (B) (1) (c) (2). See also *Cooper*, 390 F3d at 720 (II) (C).

We conclude that the trial court abused its discretion in granting certification of the Warrens' injunctive and declaratory relief claims under Rule 23 (b) (2). As the Florida District Court of Appeal noted in a similar reinspection abuse case:

> The goal of the . . . action against [Orkin] is the recovery of substantial money damages for [the named plaintiffs] and for the putative class members. The recovery of money damages is at the core of the dispute; it is certainly not incidental to any claims for declaratory and injunctive relief.

*Butland*, 951 S2d at 882 (V) (C) (3).

The centrality of monetary damages to the class claims is demonstrated by the trial plan proposed in the Warrens' reply memorandum in support of their motion for class certification. In their proposed trial plan, the Warrens request that the trial court first "decide [the] threshold questions" of whether the class is entitled to declaratory and injunctive relief based on a finding that Orkin's print and broadcast advertisements are deceptive and that several of the disclaimers in the termite contracts are unenforceable or voidable. According to the Warrens, after these questions are resolved by the trial court, a jury trial should be conducted on the monetary damages claims. Following a jury trial, the Warrens propose that the trial court enter a mandatory injunction requiring full and complete reinspections of each class member's property, with Orkin then being required "to evaluate and offer to pay Class Members' claims for property damages" based on the information obtained through the reinspections. Finally, if the property damages claims "remain unsettled after a prescribed period of time . . . following completion of all compulsory reinspections," the Warrens advocate that the property damages claims be resolved through individual mini-trials or arbitration.

Based on the Warrens' trial plan, it is clear that the purpose of the requested declaratory and injunctive relief "is to lay a legal foundation for the recovery of money damages." *Butland*, 951 S2d at 882 (V) (C) (3). For example, injunctive relief predicated on a finding that Orkin engaged in deceptive advertising would serve as a stepping stone for the Warrens' damages claims alleging that Orkin fraudulently promised to annually reinspect its termite customers' property and ensure that termites had not reinfested or damaged the premises. Likewise, declaratory and injunctive relief based on a finding that disclaimers in the termite contracts were unenforceable or voidable would serve to prevent Orkin from relying on those contractual terms as a defense to the monetary damages claims. Moreover, the Warrens' request that the trial court enter an injunction requiring Orkin to reinspect all of its customers' property clearly is intended to serve as the predicate for the payment of class members' property damages claims. In light of these circumstances, the requested declaratory and injunctive relief "would be little more than an overture to the damages opera" such that class certification pursuant to Rule 23 (b) (2) is inappropriate.[5] Id.

---

[5] In arguing that certification was proper under Rule 23 (b) (2), the Warrens rely upon *Mabry*, 274 Ga. 498. But, in that case, certification apparently was under Rule 23 (b) (3), since the trial court found, and the Supreme Court of Georgia explicitly affirmed, that the predominancy requirement had been satisfied. See id. at 499-500 (1). The conflict in *Mabry* was over the scope and meaning of a standardized provision found in the automobile insurance policy

Additionally, we note that monetary damages claims are not merely incidental when the damages claims of each individual class member "would require detailed, case-by-case fact finding" at mini-trials. *Cooper*, 390 F3d at 721 (II) (C). See also *Allison*, 151 F3d at 415 (V) (B) (1) (c) (2); *Colomar*, 242 FRD at 683 (C) (3). As noted in Division 1, that is the case here.

For these reasons, the trial court abused its discretion in certifying the declaratory and injunctive relief claims under Rule 23 (b) (2). See *Butland*, 951 S2d at 882 (V) (C) (3). See also *Cooper*, 390 F3d at 720-721 (II) (C); *Allison*, 151 F3d at 411 (V) (A). The trial court's order granting class certification, therefore, is reversed.

*Judgment reversed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 1, 2007 —

*Brock, Clay, Calhoun & Rogers, Charles C. Clay, King & Spalding, Barry Goheen, Dwight J. Davis, Powell Goldstein, LeeAnn Jones, Rhett E. W. Marionneaux, Jr., Rogers & Hardin, Richard H. Sinkfield*, for appellants.

*Dupree & Kimbrough, Hylton B. Dupree, Jr., Roy E. Barnes, John F. Salter, Jr., Allison B. Salter, Patrick N. Millsaps*, for appellees.

---

common to all of the class members. More specifically, the central issue was whether State Farm had a contractual "duty to evaluate all first-party physical damage claims for the existence of diminution in value" and pay for such losses. See id. at 502 (4), 510 (5). The undisputed evidence showed that State Farm had not developed a methodology or maintained information necessary for such an evaluation and thus had not paid for such losses. See id. at 510 (5). Hence, it was undisputed that if the class members' interpretation of the insurance policy was correct, State Farm had breached it. In contrast, here the parties dispute not only whether Orkin's termite contracts required annual reinspections for all its termite customers, but also whether annual reinspections were actually or adequately performed for every customer, and if not, whether it was the fault of Orkin or the failure of the customer to carry out his or her affirmative contractual duties. And, as noted in Division 1, answering this question of whether a breach occurred would require a highly particularized factual determination as to each putative class member. Given these important distinctions between the two cases, *Mabry* plainly is inapposite.