A05A1945. LEE v. THOMASON et al.
(627 SE2d 168)

PHIPPS, Judge.

After Billy Eugene Lee's truck collided with James Thomason's vehicle, Thomason sued Lee for personal injuries and Thomason's wife sued for loss of consortium.[1] A jury awarded damages of $1,437,000 to Thomason and $938,000 to his wife. Lee appeals, arguing that the trial court should have granted his motions for judgment notwithstanding the verdict (j.n.o.v.) and new trial. He claims, among other things, that the Thomasons offered no evidence to refute his loss of consciousness defense and that the evidence did not support the damages awards. Because evidence in the record supports the verdict, we affirm.

When reviewing a trial court's denial of a motion for j.n.o.v. or new trial, this Court determines if there is any evidence to support the jury's verdict. Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of

---

[1] Initially, the complaint also named as defendants Fulton County (Lee's employer), the Fulton County Board of Commissioners, and Lee in his official capacity, but those parties were later dismissed from the suit.

the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict.[2]

Viewed in this light, the evidence showed that Lee, an employee of the Fulton County Water Department, was driving north on Georgia Highway 400 in a county truck after responding to a call to repair a broken water main. He ran a red light at the intersection of Highway 400 and Jot'em Down Road and hit Thomason's pickup truck, which was traveling west on Jot'em Down Road. The impact of the collision sent both trucks into the median of Highway 400, where bystanders removed Thomason, who was unconscious, from his truck. Thomason was airlifted to a hospital, where he spent more than a month recuperating from multiple serious injuries.

Three eyewitnesses testified at trial that they were positive that the traffic light for vehicles traveling on Highway 400 was red at the time of the collision. One witness, who had stopped in the lane next to Lee, testified that when Lee ran the red light, his truck was in the proper lane and was not swerving. Lee testified that people at the collision scene told him that he had run the red light, and he admitted pleading guilty to a charge of failing to obey a traffic control device. Lee's supervisor, however, testified that Lee told him that Thomason had run the red light in front of him and that he had no time to react and could not avoid hitting Thomason.[3] Likewise, Lee signed a workers' compensation injury report stating, "I was driving north on 400 crossing Jot'em Down Rd. when a truck ran the traffic light and I hit the vehicle."[4]

At trial, Lee claimed that he did not remember the collision because he "passed out" approximately ten minutes before it happened and did not regain consciousness until he "pried [him]self out of the truck" afterward. Lee conceded that he had never passed out while driving on any other occasion, that he had never sought medical treatment for his loss of consciousness, and that he had never told anyone about it before the trial. Thomason's lawyer asked Lee, "Do you know how your car maintained its lane and speed and went forward as you were passed out?" Lee responded, "No, sir."

---

[2] *CSX Transp. v. West*, 240 Ga. App. 209, 210 (1) (523 SE2d 63) (1999) (citations omitted).

[3] Although Lee testified that he had no memory of making such a statement, the supervisor testified that he included Lee's explanation in his official report of the collision.

[4] Lee claimed that he neither prepared the report nor read it before signing it.

1. Lee argues that the trial court should have entered judgment in his favor or ordered a new trial because the Thomasons offered no evidence to refute his loss of consciousness defense. He cites the rule that "a sudden and unforeseeable loss of consciousness by a driver is a complete defense to a claim that the driver negligently lost control of the automobile and proximately caused an ensuing accident."[5] It was up to the jury, however, to determine whether Lee's loss of consciousness defense was applicable based on the evidence.[6] Although the Thomasons presented no evidence directly countering Lee's testimony that he "passed out" at the wheel, his accounts of the collision to his supervisor and on a workers' compensation form did not indicate that he was unconscious at the time. Moreover, Lee was unable at trial to explain how his truck maintained its forward motion within the proper lane while he was supposedly unconscious. Under these circumstances, the jury was not required to accept Lee's claim that he had "passed out." Because there was evidence from which the jury could have concluded that Lee consciously ran the red light, the trial court did not err by denying his motions for directed verdict and new trial based on his loss of consciousness defense.[7]

2. Lee argues that the court erred by charging the jury that a driver's "disregard or disobedience for the instructions of any traffic control device or signal by the driver shall be deemed prima facie evidence of a violation of law." He claims that the charge was not warranted in light of his uncontroverted loss of consciousness defense.

A trial court has the duty to charge the jury on the law applicable to issues in the case, and "[i]f there is even slight evidence on a specific issue, . . . it is not error for the court to charge the jury on the law related to that issue."[8] Because, as explained in Division 1, there was evidence that Lee consciously ran the red light, the court did not err in giving the negligence per se charge.[9]

3. Lee contends that in light of Thomason's contributory negligence, the trial court should have granted him a new trial or used a special verdict form to allow the jury to apportion fault. We disagree.

---

[5] *Lewis v. Smith*, 238 Ga. App. 6, 7 (517 SE2d 538) (1999) (citation omitted).

[6] See *Wall v. Hall*, 244 Ga. App. 61, 64 (1) (b) (534 SE2d 828) (2000) (loss of consciousness defense available only if the jury finds "the necessary factual predicate").

[7] See *Cameron v. Peterson*, 264 Ga. App. 1, 3 (589 SE2d 834) (2003) (directed verdict on liability proper in automobile collision cases only in "rare circumstances" when liability is admitted or facts are not disputed).

[8] *Thrash v. Rahn*, 249 Ga. App. 351, 352 (1) (547 SE2d 694) (2001) (citation omitted).

[9] See *Ledee v. Devoe*, 250 Ga. App. 15, 21-22 (8) (549 SE2d 167) (2001) (not error to give charge on negligence per se when evidence warrants it); *Cannon v. Street*, 220 Ga. App. 212 (469 SE2d 343) (1996) (failure to stop for red light constitutes negligence per se).

(a) "Except in plain, palpable and indisputable cases, all questions of negligence, contributory negligence, cause and proximate cause, and whose negligence constituted proximate cause of an injury, are for the jury."[10] Thomason testified that although he had no memory of the collision or the events immediately preceding it, "[m]ost of the time" he would look to make sure cars were not approaching before proceeding through a green light at the intersection of Highway 400 and Jot'em Down Road. Contrary to Lee's argument, this testimony did not demand the conclusion that Thomason acted negligently as a matter of law. Rather, that was an issue for the jury, and Lee was not entitled to a directed verdict or new trial.[11]

(b) With respect to Lee's argument that the jury should have used a special verdict form, *Whelan v. Moone*[12] is controlling. In that automobile collision case, as in this one, the defendant argued that the plaintiff's own negligence barred her recovery. We held that the trial court did not err by using a general verdict form, rather than a special verdict form, because "[t]he court's instruction that the jury reduce [the plaintiff's] recovery in proportion to her negligence provided adequate guidance concerning the comparative negligence rule."[13] The trial court's instructions on comparative and contributory negligence in this case were substantially similar to those approved in *Whelan*. Accordingly, the trial court did not abuse its discretion by submitting a general verdict form to the jury.

4. Lee contends that there was no evidence to support the jury's award of damages for loss of consortium to Thomason's wife. She testified that since the collision, she must help Thomason put his socks on every day; he is unable to remember things; and he has become moody, quiet, sad, and depressed. She stated, "[W]hen he left that night, my husband left. What I've got now is not the same man. He's different. His whole personality has changed." Lee maintains that Thomason's wife's failure to testify specifically about a loss or impairment of sexual relations bars her recovery for loss of consortium. We disagree.

Consortium means "the marital rights and duties of the spouses inter se, the reciprocal rights and duties of society, companionship, love, affection, aid, services, cooperation, sexual relations, and comfort, such being special rights and duties growing out of the marriage

---

[10] *Roberts v. Dove*, 234 Ga. App. 853, 854 (1) (508 SE2d 213) (1998) (citation and punctuation omitted).

[11] See id.

[12] 242 Ga. App. 795 (531 SE2d 727) (2000).

[13] Id. at 797 (2).

covenants."[14] "Damages for loss of consortium are not capable of exact pecuniary measure and must be left to the enlightened conscience of impartial jurors taking into consideration the nature of the services, society, companionship and all the circumstances of the case."[15] Although consortium includes sexual relations, it also includes non-sexual aspects of a marital relationship. Lee cites no authority for the proposition that damages for loss of consortium are available only when a spouse testifies about a loss or impairment of sexual relations, and we find none. The evidence was sufficient to support the loss of consortium award.

5. Finally, Lee contends that the evidence did not support the jury's award of $1,437,000 in damages to Thomason for pain and suffering, medical expenses, lost earnings, and property damage.

(a) *Generally.*

> [A] jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in the light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors. Even though the evidence is such as to authorize a greater or lesser award than is actually made, the appellate court will not disturb it unless it is so flagrant as to "shock the conscience." The trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence.[16]

In light of the seriousness of Thomason's injuries, his protracted recovery, and his continuing physical and mental impairments, we cannot say that the amount of the award "shocks the conscience."

(b) *Pain and suffering.* Damages for past, present, and future pain and suffering are "determined solely by the enlightened conscience of an impartial jury."[17] Although Lee claims that Thomason failed to prove these damages because he does not remember the collision and was in a coma for days afterward, there was sufficient evidence of Thomason's condition after he regained consciousness to support an award of damages for pain and suffering.

---

[14] *W. J. Bremer Co. v. Graham*, 169 Ga. App. 115, 116 (312 SE2d 806) (1983) (citation and emphasis omitted).

[15] *Mortensen v. Fowler-Flemister Concrete*, 252 Ga. App. 395, 397 (3) (555 SE2d 492) (2001) (punctuation and footnote omitted).

[16] *McCormick v. Harris*, 253 Ga. App. 417, 418-419 (559 SE2d 158) (2002) (citations and punctuation omitted).

[17] *Wayco Enterprises v. Crews*, 155 Ga. App. 775, 777 (2) (272 SE2d 745) (1980) (citation omitted).

(c) *Medical expenses.* Lee claims that Thomason failed to show that his medical expenses were "reasonable and necessary."[18] Thomason presented the testimony of his treating physicians, as well as his medical bills. One physician, when shown a list of Thomason's medical expenses, testified that the services and treatments were "necessary," but did not address the reasonableness of the amounts charged because he had not personally performed the billing. Although Lee argues that this omission constitutes a lack of proof, we have held that "introducing the doctor's bill and then introducing the doctor himself ordinarily cures any error in failing to specifically testify that the bills were 'reasonable and necessary.' "[19]

(d) *Lost earnings.* Lee claims that the Thomasons failed to present evidence to support an award of damages for lost earnings. "Lost wages and earnings are recoverable where the evidence shows the amount of loss with reasonable certainty. Loss of future earnings is recoverable where evidence is presented on the permanency of plaintiff's injury, the effect of injury on earnings, and the monetary amount thereof."[20]

Thomason testified that, before the collision, his family's primary source of income was chicken farming, and he had no plans to retire. Because six to ten percent of their typical 90,000-member flock died before processing, dead birds had to be removed on a daily basis. Thomason testified that, after the collision, he kept falling down in the coop and could no longer remove the dead birds. Finally, six months before trial, the family had to stop raising chickens. Thomason's wife testified that the family was paid an average of $30,000 for each flock they raised, that they usually raised five or six flocks a year, and that they missed out on raising two flocks after the collision. She also testified that, after the collision, her husband was not able to pick up the chickens and could not remember what needed to be done. She cited his inability to help as the main reason the family stopped chicken farming. This testimony was sufficient to support an award of lost earnings.[21]

(e) *Property damage.* Lee argues that Thomason failed to present sufficient evidence of the value of his truck to support an award of damages for loss of personal property. But Thomason's wife testified

---

[18] See *Barnes v. Cornett*, 134 Ga. App. 120, 120-121 (3) (213 SE2d 703) (1975) ("The law requires proof that the medical expenses arose from the injury sustained, and that they are reasonable and necessary before they are recoverable. [Cit.]").

[19] *Johnson v. Cook*, 123 Ga. App. 302, 303-304 (1) (180 SE2d 591) (1971) (citation omitted).

[20] *Olariu v. Marrero*, 248 Ga. App. 824, 827 (3) (a) (549 SE2d 121) (2001) (citations omitted).

[21] See id. at 828.

about the value of the truck. Because there was an evidentiary basis for a personal property damages award, we will not disturb the verdict.[22]

6. Lee claims that the trial court erred by admitting into evidence two accident reports created by his supervisor because plaintiffs' counsel failed to lay the foundation necessary to admit these reports as business records. We disagree. Under OCGA § 24-3-14 (b), any writing made as a memorandum of any occurrence is admissible as proof of the occurrence if the trial court finds that it was "made in the regular course of any business and that it was the regular course of such business to make the memorandum . . . at the time of the . . . occurrence . . . or within a reasonable time thereafter." Accident reports may be admissible under OCGA § 24-3-14 (b) if they meet the above requirements.[23] Lee's supervisor personally made the reports in the regular course of business shortly after the collision occurred based on what Lee had told him. Both Lee and the supervisor testified at trial and were available for cross-examination. Under these circumstances, the trial court did not abuse its discretion by admitting the reports.[24]

7. Finally, Lee contends that the trial court erred by permitting plaintiffs' counsel to refer to his employer, Fulton County. The court granted Lee's motion in limine to exclude any references to the fact that Fulton County paid for Lee's defense, but ruled that "who [Lee] was working for and in what capacity, that's facts and that's relevant." Lee claims that the court ran afoul of its ruling by allowing plaintiff's counsel to refer to Fulton County numerous times, thereby "unfairly and prejudicially interject[ing] insurance coverage or the insurance provider into the case." Nineteen of the twenty-one references that Lee cites had nothing to do with payment for Lee's defense and therefore did not violate the court's pretrial ruling. In the remaining two references, plaintiffs' attorney mentioned Fulton County's attorneys in closing argument. Defense counsel objected and sought a curative instruction, but the court declined to give it on the ground that further mention of Fulton County's attorneys would only draw the jury's attention to a passing reference that they might

---

[22] See generally *Ledee*, supra, 250 Ga. App. at 15.

[23] See *Pryor v. Phillips*, 222 Ga. App. 116, 118 (4) (473 SE2d 535) (1996); compare *Brown v. State*, 274 Ga. 31, 32-36 (1) (549 SE2d 107) (2001) (trial court erred by allowing police officer to read into evidence narrative portion of police accident report of which he had no personal knowledge and which he did not prepare).

[24] See *Massey v. State*, 269 Ga. App. 152, 154 (2) (603 SE2d 431) (2004) (abuse of discretion standard applies to trial court's decision to admit evidence under OCGA § 24-3-14).

have missed. Because the references did not directly state or necessarily imply that Fulton County was paying for Lee's representation, the trial court did not abuse its discretion by refusing to give a curative instruction.[25]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 13, 2006.

Willie J. Lovett, Jr., Rory K. Starkey, Nicolle G. Holt, Marina K. Duncan, for appellant.

Broughton & Fernandez, Allen L. Broughton, Brian C. McCarthy, for appellees.

---

[25] See *Jolly v. Zarella*, 252 Ga. App. 130, 132 (555 SE2d 798) (2001) (whether to give curative instruction is within sound discretion of trial court).