## A10A1317. DOCTORS HOSPITAL SURGERY CENTER, L.P. v. WEBB et al.
### (704 SE2d 185)

DOYLE, Judge.

Doctors Hospital Surgery Center, L.P., d/b/a Evans Surgery Center (the "Hospital") appeals from the certification of a class action filed by Charlie and Dora Webb. The Hospital contends that the trial court abused its discretion by certifying the class action because the claims brought by the Webbs do not satisfy the statutory prerequisites authorizing them to sue as representative parties. For the reasons that follow, we agree and reverse the trial court's certification order.

The Webbs' complaint alleged that in January 2009, Charlie Webb had a colonoscopy performed with an endoscope at the Hospital. In February 2009, the Hospital discovered that the endoscope equipment had not been sterilized in accordance with the manufacturer's specifications from September 10, 2007, to February 9, 2009. Also in February 2009, the Hospital sent letters to the approximately 1,300 potentially affected patients seen during that time period, including Charlie Webb. The letter informed patients of the improper sterilization protocol and explained that the risk of infection was "near zero" according to "leading authorities in infectious diseases," and the Hospital offered free testing at an independent lab (any LabCorp location) to discover certain infectious diseases. Follow-up testing was apparently later offered as patients received their initial results. Charlie was tested twice and received negative results.

---

In April 2009, the Webbs sued the Hospital, later moving to represent the class of patients who received endoscopic procedures during the affected time period. The complaint enumerated claims for breach of contract, rescission, and negligence, seeking damages for the following types of losses: money paid for the procedures, compensation for any contracted diseases, continued medical monitoring at the Hospital's expense, loss of consortium, anxiety, worry, emotional distress, punitive damages, litigation costs, and attorney fees. Following limited discovery, briefing, and a hearing, the trial court entered an order prepared by the Webbs granting their motion to certify the class action with respect to liability and the availability of punitive damages, reserving individual damages for separate determination if liability is established. The Hospital now appeals.

The Webbs have the burden of establishing their right to class certification in the trial court, and we review the trial court's decision in certifying a class action for abuse of discretion.[1]

The statute authorizing class actions is OCGA § 9-11-23, which provides as follows:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) The class is so numerous that joinder of all members is impracticable; (2) There are questions of law or fact common to the class; (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) The representative parties will fairly and adequately protect the interests of the class.

> (b) An action may be maintained as a class action if the prerequisites of subsection (a) of this Code section are satisfied, and, in addition: . . . (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) The extent and nature of any litigation concern-

---

[1] See *Jones v. Douglas County*, 262 Ga. 317, 323-324 (2) (418 SE2d 19) (1992).

ing the controversy already commenced by or against members of the class; (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) The difficulties likely to be encountered in the management of a class action.[2]

Thus, "[t]o obtain class action certification, the named individuals are required to satisfy all four prerequisites of OCGA § 9-11-23 (a), [and] at least one of the requirements set forth in . . . OCGA § 9-11-23 (b)."[3] Certification is improper if "a plaintiff fails to establish even one of the required factors listed in OCGA § 9-11-23 (a) and (b)."[4] "In determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of [the statute] have been met."[5] This involves an analysis of "considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[6]

The trial court's order certified the Webbs' case under two theories. The first, under OCGA § 9-11-23 (b) (2), was that the Webbs sought injunctive relief in the form of continued medical monitoring for patients and spouses, which the Hospital allegedly declined to provide. The second, under OCGA § 9-11-23 (b) (3), was that the Webbs sought damages for contractual and negligence claims that presented common issues predominating over individual questions.

1. *Certification under OCGA § 9-11-23 (b) (2) — whether class-wide injunctive relief was appropriate based on the Hospital's refusal to act on grounds generally applicable to the class.* The trial court ruled that the medical monitoring sought by the Webbs authorized certification under OCGA § 9-11-23 (b) (2). The Hospital argues that the claim for continued medical monitoring is moot in light of the fact that the incubation periods for any infectious diseases passed many months ago. To the extent that this claim seeks monitoring that was never offered by the Hospital, e.g., of spouses, the claim is not moot because it seeks a purported remedy not yet obtained.[7]

---

[2] The trial court's order and the enumerated errors are premised on the application of subsections (b) (2) and (3), so the quoted text omits subsection (b) (1).

[3] *Diallo v. American Intercontinental Univ.*, 301 Ga. App. 299, 300 (687 SE2d 278) (2009).

[4] Id.

[5] (Punctuation omitted.) *McGarry v. Cingular Wireless*, 267 Ga. App. 23, 25 (1) (599 SE2d 34) (2004). See also *Intl. Business Machines Corp. v. Kemp*, 244 Ga. App. 638, 642 (2) (536 SE2d 303) (2000).

[6] (Punctuation omitted.) *McGarry*, 267 Ga. App. at 25 (1).

[7] See id. (certification analysis does not address merits of action or whether a claim is properly stated).

Nevertheless, "certification under [OCGA § 9-11-23] (b) (2) is inappropriate if the predominate relief sought in the action is monetary damages. Monetary relief predominates in the action unless it is incidental to requested injunctive or declaratory relief."[8] We conclude that the trial court abused its discretion in granting certification based on the claim for medical monitoring because the recovery of monetary damages is at the core of this dispute. In addition to medical monitoring, the Webbs' complaint seeks payment for the following types of losses: money paid for the procedures, compensation for any contracted diseases, loss of consortium, anxiety, worry, emotional distress, and punitive damages. Indeed, the trial court's order bifurcating the liability and damages phases, trying damages separately to a jury if necessary, demonstrates that the damages claims in the complaint overwhelm the injunctive relief sought and are not merely incidental thereto.[9] Therefore, the trial court erred by certifying the action under OCGA § 9-11-23 (b) (2).

2. *Certification under OCGA § 9-11-23 (b) (3) — whether common questions predominate over individual questions.* The Webbs' complaint enumerated three claims (breach of contract, rescission, and negligence) and, as noted above, sought damages including money paid for the procedures, compensation for any contracted diseases, loss of consortium, anxiety, worry, emotional distress, punitive damages, litigation costs, and attorney fees. Applying the requirements of OCGA § 9-11-23 in the context of these claims, it becomes apparent that the claims for damages fall into two categories: (1) breach of contract and rescission, which are premised on money paid for the allegedly improper procedure itself, and (2) the negligence claim, which encompasses various other harms flowing from the allegedly improper procedures (such as loss of consortium, anxiety, worry, and emotional distress).

Breach of contract and rescission are somewhat susceptible to class action treatment because the Webbs are typical members of the class for purposes of questions such as payment for an allegedly flawed service, and the liability for breach of contract and rescission can readily be proven based on general contractual concepts applicable across the class. The negligence claim, however, is less susceptible to class action treatment because that claim, as pleaded by the Webbs, includes highly personalized injuries including anxiety, emotional distress, and loss of consortium.

In the present context, the particularity of the negligence claim

---

[8] (Citations and punctuation omitted.) *Rollins, Inc. v. Warren*, 288 Ga. App. 184, 192 (2) (653 SE2d 794) (2007).

[9] See id. at 193 (2) (relying in part on trial plan showing the centrality of monetary damages to class claims).

is important because if "the issue of liability vel non turns upon highly individualized facts, the [plaintiff] cannot meet the predominance requirement of [OCGA § 9-11-23] (b) (3)."[10] The qualitative analysis necessary to show liability for injuries such as loss of consortium, anxiety, and emotional distress demonstrates that common questions vital to proving causation must be answered on a highly individualized basis.

The trial court's order attempts to address this problem by bifurcating the trial into a liability phase and a damages phase. But this approach ignores the fact that, aside from proving the amount of damages, the essential elements of a negligence claim include "a reasonable close causal connection between the conduct and the resulting injury. . . ."[11] Each person has different experiences with stress and anxiety, and any injury to the person or spousal relationship (if a class member is married) will necessarily be based on highly individualized factors. Thus, "[t]o recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury."[12]

In the present context, proving causation for claims based on injuries such as anxiety, loss of consortium, and emotional distress is inherently specific to the individuals affected.[13] For example, Charlie Webb deposed that he suffers from post traumatic stress disorder that pre-existed his treatment by the Hospital, and he agreed that it would be difficult, if not impossible, to determine to what extent his anxiety is attributable to the treatment as opposed to his pre-existing condition. Further, to demonstrate liability for loss of consortium (even for an amount of damages to be determined later), a plaintiff must show that the Hospital's negligence was the proximate cause of a loss of the reciprocal rights and duties of the marriage covenants, such as "society, companionship, love, affection, aid, services, cooperation, sexual relations, and comfort."[14] Proving causation of the loss of such rights and duties would necessarily require a case-by-case inquiry into the characteristics of each married class member's marriage and lifestyle.[15] Accordingly, the Webbs' burden of proof,

---

[10] (Punctuation omitted.) Id. at 192 (1).

[11] *James v. Flash Foods*, 267 Ga. App. 210, 212, n. 3 (598 SE2d 919) (2004). See also *Castleberry's Food Co. v. Smith*, 205 Ga. App. 859, 862 (2) (424 SE2d 33) (1992) ("Whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of plaintiff's case.") (punctuation omitted).

[12] *Atlanta Obstetrics &c. v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990).

[13] See, e.g., *Lee v. Thomason*, 277 Ga. App. 573, 576-577 (4) (627 SE2d 168) (2006).

[14] (Punctuation omitted.) Id. at 576 (4).

[15] See, e.g., id. (evidence supporting loss of consortium claim included testimony that husband required help to put his socks on every day, his personality had changed, and he had become forgetful, moody, quiet, sad, and depressed). Cf. *Williams v. Cox Enterprises*, 159 Ga.

even for liability alone, is inextricably linked to a case-by-case evaluation of causation for each class member's injuries.[16] Therefore, "[b]ecause many individual suits would be necessary in this case even if the one or two common issues were resolved class-wide, we are constrained to conclude that the trial court abused its discretion in granting [the Webbs'] motion for class certification."[17]

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 23, 2010.

*Wargo & French, Michael S. French, John P. Mittelbach, Insley & Race, Brian K. Mathis*, for appellant.
*Stanley G. Jackson, Douglas M. Nelson*, for appellees.
*Victor C. Hawk*, amicus curiae.

---

App. 333, 335-336 (4) (283 SE2d 367) (1981) (class action certification "particularly inappropriate" for participants in Peachtree Road Race because plaintiff's negligence suit was premised on allegedly improper warning about race conditions and difficulty, and liability would depend on individualized inquiry).

[16] Cf. *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 302 (4) (528 SE2d 777) (2000) ("every patient or client has unique sensibilities").

[17] *Life Ins. Co. of Ga. v. Meeks*, 274 Ga. App. 212, 219 (4) (617 SE2d 179) (2005). See also *Tanner v. Brasher*, 254 Ga. 41, 45 (2) (326 SE2d 218) (1985) ("Where the resolution of individual questions plays such an integral part in the determination of liability, a class action suit is inappropriate."). This also confirms our conclusion in Division 1 because "monetary damages claims are not merely incidental when the damages claims of each individual class member would require detailed, case-by-case fact finding at mini-trials." (Punctuation omitted.) *Rollins*, 288 Ga. App. at 194 (2).