**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

February 3, 2025

# In the Court of Appeals of Georgia

A24A1694. ATLANTA POSTAL CREDIT UNION v. COSBY et al.

A24A1854. ATLANTA POSTAL CREDIT UNION v. DAVIS et al.

MARKLE, Judge.

In these companion cases arising from the assessment of overdraft fees, Lyric Cosby and Ronnie Davis sued the Atlanta Postal Credit Union (APCU) and sought class certification. The trial court granted class certification and denied motions to dismiss in both cases, and it denied APCU's motion to compel arbitration in the Davis case. In Case No. A24A1694 ("the Cosby case"), APCU appeals, arguing that the trial court erred by granting class certification. In Case No. A24A1854 ("the Davis case"), APCU contends that the trial court erred by granting class certification and by denying its motions to dismiss and to compel arbitration. For the reasons that

follow, we affirm the trial court's order in the Cosby case. We affirm the trial court's orders denying the motion to dismiss and to compel arbitration in the Davis case, but remand with instructions to clarify the time period in which the claims arose.

We review the denial of a motion to dismiss de novo, "accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of the plaintiff." (Citation omitted.) *Atlanta Postal Credit Union v. Holiday*, 367 Ga. App. 168, 174 (1) (885 SE2d 196) (2023). "In accordance with the broad discretion afforded the trial court in deciding whether a plaintiff has met the statutory requirements [for class certification], an appellate court's scope of review is limited to assessing whether the trial court abused its discretion." *Vest Monroe, LLC v. Doe*, 319 Ga.649, 650 (906 SE2d 406) (2024); see also *Holiday*, 367 Ga. App. at 175 (2).

*Case No. A24A1694*

1. *Procedural history of Cosby case*

In July 2021, Cosby, on behalf of himself and others similarly situated, sued APCU for breach of contract and unjust enrichment and sought a declaratory judgment and injunctive relief in connection with the application of overdraft fees to

transactions that did not actually overdraw the account.[1] According to the class-action complaint, Cosby was an account holder at APCU. Per the terms of the Membership and Account Agreement,

[i]f, on any day, the *available* balance in your . . . checking account is not sufficient to pay the full amount of a . . . transaction, plus any applicable fees, that is posted to your account, we may return the item or pay it[.] . . . Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

(Emphasis supplied.)

But, the available account balance would often be less than the actual or ledger balance shown on the account statements, and therefore APCU frequently assessed fees when there *were* sufficient funds in the account and the account was not overdrawn. Cosby identified four specific instances from 2016 through 2018 in which APCU applied the overdraft fees to his account in this manner.

---

[1] The amount of the fee was initially $30, but then increased to $32 during the relevant time period.

Cosby alleged that APCU breached the Account Agreement and the covenant of good faith and fair dealing by assessing fees when these transactions did not actually overdraw the account's actual balance. Cosby further alleged, in the alternative, unjust enrichment through APCU's wrongful retention of account members' funds. Cosby requested the trial court certify the class for damages and equitable relief under OCGA § 9-11-23 (b) (2) and (b) (3) as "[a]ll current and former [APCU] accountholders (sic) who are citizens of the State of Georgia who, from July 21, 2015 to the present, were charged overdraft fees on items that did not overdraw their checking account's actual/ledger balance." Cosby also submitted a report from an expert in data analysis, who opined that he would be able to identify the class members and calculate the total fees assessed to each through an algorithm he had created.

While the Cosby case was pending, the same trial court granted class certification in a similar case challenging APCU's application of overdraft fees, and it identified the class as current and former account holders who were charged overdraft fees between August 6, 2014 and August 31, 2021. *Holiday*, 367 Ga. App. at 172. The plaintiff in *Holiday* alleged breach of contract and sought declaratory and injunctive relief in addition to damages. Id. at 169.

APCU opposed class certification, arguing that it merely expanded the class from *Holiday*; Cosby had not properly pled claims for injunctive and declaratory relief; and unjust enrichment was not an appropriate claim for class certification, as no one disputed there was a contract. APCU noted that the Account Agreement clearly stated that the fees would be based on the available balance rather than the actual balance. APCU further noted that it had amended the Account Agreement to add provisions requiring notice and binding arbitration, including a class participation waiver.

Following a hearing, the trial court granted class certification, noting that Cosby's case differed from the *Holiday* class in its claim for unjust enrichment from July 21, 2017 through August 31, 2021; its claim for declaratory and injunctive relief from July 21, 2017 through the present; and its claim for breach of contract from September 1, 2021 to the present. The trial court defined the class in the Cosby case as:

(a) For the unjust enrichment claims: "All current and former [APCU] accountholders who are citizens of the State of Georgia who, from July 21, 2017 to August 31, 2021, were charged overdraft fees on items that did not overdraw their checking account's actual/ledger balance";

5

(b) For the declaratory and injunctive relief: "All current and former [APCU] accountholders who are citizens of the State of Georgia who, from July 21, 2017 to the present, were charged overdraft fees on items that did not overdraw their checking account's actual/ledger balance"; and

(c) For the breach of contract claims: "All current and former [APCU] accountholders who are citizens of the State of Georgia who, from September 1, 2021 to the present, were charged overdraft fees on items that did not overdraw their checking account's actual/ledger balance."

APCU now appeals.

2. *APCU's appeal in the Cosby case*

We begin with the relevant case law applicable to class certification cases. "In determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of OCGA § 9-11-23 [ ] have been met." (Citation and punctuation omitted.) *Liberty Lending Svcs. v. Canada*, 293 Ga. App. 731, 735 (1) (668 SE2d 3) (2008). "[I]n order to certify a class, a trial court must find that the putative class satisfies the four prongs of OCGA § 9-11-23 (a), which are: (1) numerosity,

6

(2) commonality, (3) typicality, and (4) adequate representation."[2] (Punctuation and footnote omitted). *Rice*, 370 Ga. App. at 355 (3); see also *Holiday*, 367 Ga. App. at 175-176 (2).

As is relevant to this appeal, once those prerequisites are satisfied, the plaintiff must then meet the requirements of either OCGA § 9-11-23 (b) (2) or (b) (3). *Bowden v. Med. Center Inc.*, 309 Ga. 188, 193-194 (1) (b) (845 SE2d 555) (2020); *Rice*, 370 Ga. App. at 355 (3). Under OCGA § 9-11-23 (b) (2), the plaintiff must show that "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"

Under OCGA § 9-11-23 (b) (3), the plaintiff must show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[3]

---

[2] APCU challenges only the adequacy factor of OCGA § 9-11-23 (a).

[3] The factors relevant to the OCGA § 9-11-23 (b) (3) analysis include, "[t]he interest of members of the class in individually controlling the prosecution or defense of separate actions; . . . [t]he extent and nature of any litigation concerning the controversy already commenced by or against members of the class; . . .[t]he

Notably, to be entitled to class certification, the plaintiffs must do more than merely allege they meet the requirements; "[r]ather, the plaintiffs must come forward with evidence to prove their satisfaction of the statutory requirements." (Citations and punctuation omitted.) *Cagle v. Portfolio Recovery Assocs.*, 368 Ga. App. 41, 43 (889 SE2d 181) (2023). Whether the plaintiff has established class certification is a matter left to the trial court's discretion. *Holiday*, 367 Ga. App. at 175 (2). But,

> [i]mplicit in this deferential standard of review is a recognition of the fact-intensive basis of the certification inquiry and of the trial court's inherent power to manage and control pending litigation. Thus, we will affirm the trial court's factual findings unless they are clearly erroneous.

(Citations and punctuation omitted.) *Lewis v. Knology, Inc.*, 341 Ga. App. 86, 87 (799 SE2d 247) (2017); see also *Holiday*, 367 Ga. App. at 175 (2). Nevertheless, "certification is appropriate only to the extent that the trial court is satisfied, after a rigorous analysis, that the statutory requirements have been satisfied." (Citations and punctuation omitted.) *Bowden*, 309 Ga. at 193 (1) (a).

With these standards in mind, we turn to APCU's arguments.

---

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and . . . [t]he difficulties likely to be encountered in the management of a class action." OCGA § 9-11-23 (b) (3) (A)-(D).

(a) APCU first argues that the trial court erred by granting class certification because it failed to consider that the Account Agreement contained an arbitration clause incorporating a class action waiver. It further contends that the trial court failed to consider that Cosby did not comply with the notice provisions that were added to the Account Agreement.[4] Finally, APCU argues that the trial court erred by modifying the proposed class without notice. We discern no error.

> Claims arising from interpretation of form agreements are considered to be classic cases for treatment as a class action. Thus, Georgia case law provides that common questions of law and fact predominate when an action is brought on behalf of purchasers of agreements from a common source, the character of the right sought to be enforced is common, and common relief is sought.

(Citations, punctuation, and footnote omitted.) *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 729 (3) (a) (698 SE2d 19) (2010).

First, with respect to the arbitration and class action waiver clauses, APCU never filed a motion to compel arbitration in the trial court, despite the fact that the

---

[4] Cosby contends that APCU did not sufficiently raise these issues before the trial court. But the record reflects that APCU did raise the notice and arbitration during the proceedings, and the trial court's order specifically rejected the argument that the arbitration clause precluded class certification.

case was pending for more than two years, and thus has waived it. *USA Payday Cash Advance Center #1 v. Evans*, 281 Ga. App. 847, 849-850 (637 SE2d 418) (2006) (considering the totality of the circumstances and finding party waived arbitration by its conduct in litigating the case, including that it waited more than a year to request arbitration). Even if we were to consider this issue, we agree that the existence of an arbitration clause would not preclude class certification. Certification requires only that the plaintiff meet the statutory requirements. *Holiday*, 367 Ga. App. at 175 (2); see also OCGA § 9-11-23 (f) (2) ("Except for good cause shown, the court shall stay all discovery directed solely to the merits of the claims or defenses in the action until the court has issued its written decision regarding certification of the class."). Thus, the certification process should proceed unless litigation of the defense impacts the statutory prerequisites, such as commonality or predominance. See, e. g., *Lon Smith & Assocs. v. Key*, 527 SW3d 604, 630-631 (VI) (A) (1) (a) (Ct. App. Tx 2017) (although affirmative defense may require evaluation of individual issues, it does not preclude certification where the defense involves "proof common to the defendants.");[5] see

---

[5] Both Georgia's class certification statute and Texas's class certification rules mirror the federal rules. See Fed. R. Civ. P. 23; Tx. R. Civ. P. 42. And, "because OCGA § 9-11-23 is based on Rule 23 of the Federal Rules of Civil Procedure, it is appropriate that we look to federal cases interpreting that rule for guidance."

also Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1778 (3d ed. 2024e) (where "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under [Federal Rule Civil Procedure] 23 (b) (3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (footnotes omitted).

Here, the trial court properly determined that it could consider whether the arbitration provision barred the class action suit on a class-wide basis. Indeed, as the trial court noted, other courts to address the question have found that the presence of an arbitration clause did not preclude a determination of whether class certification is warranted. See *Mora v. Harley-Davidson Credit Corp.*, No. 1:08-cv-01453-AWI-BAM, 2012WL1189769, at * 12-13 (IV) (B) (1) (b) (E. D. Cal. 2012) (unpublished). Moreover, the arbitration and class action waiver clauses were not added to the contract until August 2021; thus many of Cosby's claims arise under the old contract, which did not contain those provisions. In any event, the application of an arbitration

---

(Citations and punctuation omitted.) *Ansley Walk Condo. Assn. v. Atlanta Dev. Auth.*, 362 Ga. App. 191, 195 (867 SE2d 600) (2021).

defense would involve answers and proof common to the class. See *Wal-Mart Stores.*

*v. Dukes*, 564 U. S. 338, 350 (II) (A) (131 S Ct 2541, 180 LE 2d 374) (2011) (in

assessing the commonality factor, "claims must depend upon a common contention

. . . . of such a nature that it is capable of classwide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke."); *Dealer Computer Svcs. v. Fox Valley Ford*,

310 F. Appx. 749 (6th Cir. 2009) (unpublished) (noting that arbitration clause in

contract did not preclude class arbitration).[6] And it would not apply to all the claims

Cosby raised prior to the effective date of the amended Account Agreement. We

therefore find no merit to APCU's claims related to the arbitration clause.

With regard to the notice provision, in *Holiday*, we rejected the claim that a

notice provision warranted dismissal of a class action complaint. *Holiday*, 367 Ga.

---

[6] As APCU notes, several cases have held that it is best to determine arbitration and class waivers before certifying the class. See, e.g., *In re Marriott International*, 78 F4th 677, 685-686 (II) (A) (4th Cir. 2023) (noting "the time to address a contractual class waiver is before, not after, a class is certified."). Nevertheless, we find these cases inapplicable where, as here, APCU amended the Agreement to include the waiver and arbitration provision in 2021, and Cosby raises claims that straddle that time period. Moreover, the trial court here never opined as to the validity of the contract provisions, saying only that it could be decided later, and we decline to reach an issue the trial court never decided.

App. at 174-175 (1). As we explained, the argument that the plaintiff has not satisfied a notice requirement was a defense that the plaintiff was not required to affirmatively disprove in the complaint. Id. We also conclude that the potential defense does not automatically preclude class certification for the same reasons applicable to the arbitration clause. *Dukes*, 564 U. S. 338 at 350 (II) (A); *Dealer Computer Svcs.*, 310 F. Appx. at 749; see also *Bickerstaff v. Suntrust Bank*, 299 Ga. 459, 469 (1) (b) (788 SE2d 787) (2016) (noting that trial court would consider whether members had opted out of arbitration agreement after class certification stage).

Finally, to the extent that APCU complains of the trial court's decision to modify the proposed class, that argument is without merit. The trial court retains the authority to modify the class as the proceedings continue. See *J. M. I. C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 378 (2) (c) (634 SE2d 123) (2006) ("It bears emphasis that certification orders are 'inherently tentative,' and the trial court retains jurisdiction to modify or even vacate them as may be warranted by subsequent events in the litigation.") (citation omitted); OCGA § 9-11-23 (c) (1).

(b) APCU next argues that the trial court erred by granting class certification on the equitable claims under OCGA § 9-11-23 (b) (2) because the main relief sought

in the complaint was damages. It contends that declaratory relief was not warranted because there was no present justiciable controversy given the lack of uncertainty or insecurity.

> The key to the (b) (2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23 (b) (2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

(Citation and punctuation omitted.) *Dukes*, 564 U. S. at 360-361 (III) (A).

Here, Cosby's complaint mentioned declaratory and injunctive relief, but it did not include those claims as separate counts, nor did Cosby indicate what declaratory relief he sought. In his prayer for relief, Cosby requested actual and punitive damages, restitution, interest, and attorney fees, and he asked the trial court to "enjoin APCU from engaging in the practices outlined herein."

Cosby's statement that he sought to have the trial court enjoin APCU from continuing its practice of basing overdraft fees on the available — rather than actual — balance was sufficient for the trial court to assess whether class certification was proper with regard to the claims for declaratory and injunctive relief. See *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 499 (1) (556 SE2d 114) (2001) (noting that issues of company's obligation to pay for dimunition in value was common to entire class and appropriate for class certification for declaratory judgment and injunctive relief). Additionally, the request for injunctive relief was not merely incidental to the claims for damages, as Cosby's counsel noted during the hearing that APCU continued its practice of assessing overdraft fees on the available balance. See, e.g., *Rollins, Inc. v. Warren*, 288 Ga. App. 184, 192 (2) (653 SE2d 794) (2007) ("certification under Rule 23 (b) (2) is inappropriate if the predominate relief sought in the action is monetary damages."); *Doctors Hosp. Surgery Center v. Webb*, 307 Ga. App. 44, 47 (1) (704 SE2d 185) (2010) ("certification under OCGA § 9–11–23 (b) (2) is inappropriate if the predominate relief sought in the action is monetary damages. Monetary relief predominates in the action unless it is incidental to requested

15

injunctive or declaratory relief.") (citation and punctuation omitted). Accordingly, the trial court properly certified the class for injunctive and declaratory relief.

(c) APCU next challenges the trial court's certification of the unjust enrichment class because there is no dispute that a contract exists and another class has been certified as to breach of contract claims.

In the complaint, Cosby alleged that the unjust enrichment claim was "brought solely in the alternative to Plaintiff's breach of contract claim and applies only if the parties' contracts are deemed unconscionable or otherwise unenforceable for any reason." Pled in this manner, we conclude that the unjust enrichment claim survives at this stage of the litigation. See *City if Roswell v. Bible*, 351 Ga. App. 828, 832 (2), n. 7 (833 SE2d 537) (2019) (class action suit alleging breach of contract and quantum meruit pled in the alternative); *Earthlink v. Eaves*, 293 Ga. App. 75 (666 SE2d 420) (2008) (class action suit alleging claims of breach of contract and unjust enrichment). Should the trial court determine in the future that there is an enforceable contract, it can amend the class to remove the unjust enrichment claims. See *J. M. I. C. Life Ins. Co.*, 280 Ga. App. at 378 (2) (c); OCGA § 9-11-23 (c) (1). In any event, there can be

no recovery for unjust enrichment where the class succeeds on the breach of contract claim. See *City of Roswell*, 351 Ga. App. at 832 (2), n. 7.

(d) Finally, APCU argues that Cosby was not an appropriate class representative because his participation in the case was minimal, and he did not allege that there had been any improper fees assessed on his account after 2018.[7]

To begin, in its arguments before the trial court, APCU did not challenge Cosby's adequacy on the ground that he identified only charges that predated 2018. Thus, it cannot raise that argument for the first time on appeal. "To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, 'He must stand or fall upon the position taken in the trial court.' Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court." (Citations and punctuation omitted.) *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

Nevertheless, we find no abuse of discretion in the trial court's conclusion that Cosby was an adequate class representative. In his deposition, Cosby was able to explain what the lawsuit was about; he knew the suit had been filed on his behalf; and

---

[7] APCU does not challenge counsel's adequacy.

he was familiar with the Account Agreement. Additionally, as the trial court noted, Cosby's claims and the claims of the class arise from the same practices, and nothing in the pleadings suggests that Cosby's interests are antagonistic to the other class members. See *Holiday*, 367 Ga. App. at 184 (2) (d); *EndoChoice Holdings v. Raczewski*, 351 Ga. App. 212, 215 (1) (830 SE2d 597) (2019); compare *Lewis*, 341 Ga. App. at 91 (1) (plaintiff was not adequate representative where she did not know any of the attorneys representing her, did not know a lawsuit had been filed in her name, and had "yielded control entirely to her counsel.").

Accordingly, for the foregoing reasons, we affirm the trial court's order certifying the class.

*Case No. A24A1854*

3. *Procedural history of Davis case*

In October 2021, Davis, on behalf of himself and others similarly situated, sued APCU for breach of contract and unjust enrichment arising from APCU's practices of (1) charging overdraft fees on transactions for which there were sufficient funds at the time the transaction was authorized, but insufficient funds at the time the charge was actually submitted for payment (called "authorized positive, settle negative" or

18

"APSN" transactions),[8] and (2) charging multiple overdraft fees for the same purchase when a charge is initially declined and then resubmitted. He also moved to certify two classes challenging the APSN transaction fees and the multiple fees. Attached to the complaint was a copy of the Account Agreement in effect during the time period covering Davis's claims. Per the terms of that Agreement, "[i]f, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a . . . transaction, or other item, plus any applicable fees, that is posted to your account, we may return the item or pay it[.] . . . Your account may be subject to a charge for each item regardless of whether we pay or return the item." The attached explanation sheet explained that "[a]n *overdraft* occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway."

In August 2021, APCU sent its members an amended Account Agreement to add provisions related to overdraft fees; requiring notice and an attempt to informally

---

[8] In other words, APCU places a hold on the funds when it authorizes the transaction, but then allows the same funds to cover other purchases that occur before the original transaction settles, leaving the account overdrawn, at which point APCU charges overdraft fees.

settle any claims relating to the Account Agreement; and a provision requiring binding arbitration and a waiver of class action suits.[9] The amended version also provides:

> If an item is returned because the available balance in your account is not sufficient to cover the item and another related transaction is subsequently presented for payment, [APCU] will charge an [insufficient funds] Fee each time a transaction is returned because it exceeds the available balance in your account (whether it arises from the same item or not). . . . [APCU] will place a hold on your account for any authorized debit card transaction until the transaction settles . . . . In some cases, the hold may exceed the amount of the transaction. When the hold ends, the funds will be added to the available balance in your account. If your account is overdrawn after the held funds are added to the available balance, an Overdraft Fee may be assessed[.]

Based on these provisions, APCU moved to dismiss Davis's class action complaint or to compel arbitration, asserting that the fees were clearly described in the Account Agreement, and Davis failed to adhere to the notice and arbitration provisions.

---

[9] Davis denies receiving any notice about changes to the Agreement. In any event, as Davis confirmed in his response to the motion to dismiss, he was not alleging any breach of the amended Account Agreement.

The trial court denied the motion to dismiss and the motion to compel arbitration, noting that APCU's claims related to potential defenses that did not justify dismissing the action, and that the original Account Agreement did not contain any notice or arbitration provisions. The trial court also certified two classes:

(1) The APSN class: "All citizens of Georgia who, during the applicable statute of limitations, were APCU checking account holders and were assessed an overdraft fee on a debit card transaction that was authorized on sufficient funds."

(2) The Multiple Fee class: "All citizens of Georgia who, during the applicable statute of limitations, were APCU checking account holders and were assessed multiple fees on an item.

APCU now appeals.

4. *APCU's appeal in the Davis case*

On appeal, APCU argues that the trial court erred by denying its motion to dismiss or to compel arbitration based on the language in the amended Account Agreement that clearly disclosed its overdraft fee provisions, required notice of any errors, and included a binding arbitration clause. Noting that other courts around the county have rejected similar arguments to the ones Davis raises, APCU contends that

the trial court failed to consider the terms of the contract. APCU further contends that the trial court should have granted the motion to compel arbitration as to the claims pertaining to fees assessed after the effective date of its amended Account Agreement.

APCU also argues that the trial court erred by certifying classes with vague time periods without a specific end date, and that any class action claims must terminate as of the date of the amended Account Agreement with the notice and arbitration provisions. APCU does not challenge the trial court's OCGA § 9-11-23 analysis, seeming to concede, at this stage of the ligation, that class treatment for the claims is proper.[10]

Importantly, on appeal, Davis confirms that his claims involve transactions that occurred between December 2016 and August 8, 2021. And at the hearing, APCU agreed that the proper cut off time would be the end of August 2021, when it amended the Account Agreement. With this in mind, we consider APCU's claims on appeal.

(a) *Motion to dismiss*

---

[10] Because APCU does not dispute that Davis satisfied the prerequisites of OCGA § 9-11-23 (a), we do not address these factors. *Earthlink*, 293 Ga. App. at 76 (1).

APCU argues that the trial court erred by denying its motion to dismiss because it had disclosed its fee practice, and the trial court failed to consider the contract it submitted showing the fee language for both the multiple fee charges and the APSN transactions. It notes that other courts have rejected the arguments Davis now raises with regard to the multiple fee claim.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation omitted.) *Holiday*, 367 Ga. App. at 174 (1). Importantly, a plaintiff is not required "to anticipate and plead away any defenses in the complaint." Id.

The flaw in APCU's argument is that it relies on the language in the amended Account Agreement, which Davis has repeatedly said was not the contract he alleged had been breached. Construing the allegations in the complaint as true, and given the terms in the Agreement Davis alleges *was* in effect during the relevant time period, the trial court properly denied the motion to dismiss. APCU failed to show that Davis

would be unable to present any evidence to support his claims.[11] Notably, nothing is

the Agreement defines "available funds," and the explanation sheet merely defines

overdrafts as a lack of funds in the account. Therefore, it is possible that Davis would

be able to prove facts showing that the account was not overdrawn at the time APCU

assessed overdraft fees. See *Holiday*, 367 Ga. App. at 173-175 (1); *Minnifield v. Wells

Fargo Bank, N. A.*, 331 Ga. App. 512, 514 (2) (771 SE2d 188) (2015) ("When

considering a motion to dismiss for failure to state a claim, a trial court may consider

exhibits attached to and incorporated into the complaint and answer." (citation

omitted).

Moreover, because the parties do not even agree on which contract controls,

dismissal is improper. See *Minnifield*, 331 Ga. App. at 514-515 (2); see also *Garrett v.

Call Fed. Credit Union*, 2024WL3928888, at *3 (III) (E. D. Va. 2024) (denying motion

---

[11] We note that other courts around the country have split on whether the plaintiffs' claims here can survive a motion to dismiss. See, e. g., *Page v. Alliant Credit Union*, 52 F4th 340 (7th Cir. 2022) (affirming grant of motion to dismiss); *Garrett v. Call Fed. Credit Union*, 2024WL3928888, at *3 (III) (E. D. Va. 2024) (denying motion to dismiss). Those cases, however, apply a different pleading standard on motions to dismiss than is applicable in Georgia. See *Collins v. Athens Orthopedic Clinic*, 307 Ga. 555, 565 (4) (837 SE2d 310) (2019) (noting difference between federal and Georgia standard).

to dismiss complaint challenging multiple fees and APSN charges because the parties relied on different versions of the contract).

APCU is also incorrect that the complaint should be dismissed due to the notice provision. It contends that the notice provision was added to the July and August 2021 versions of the Account Agreement.[12] But the allegations in the complaint involve charges that occurred before the notice provision was added to the Agreement. Thus, it cannot serve as a basis to dismiss the complaint.

(b) *Motion to compel arbitration*

APCU does not argue that the trial court should have compelled arbitration with regard to the transactions that occurred prior to the date the amendments went into effect. Rather, APCU contends that it has not waived its right to arbitration for claims that occurred after the effective date of the amendment.

Whether there was a valid and enforceable arbitration agreement is a matter for the trial court to determine. *Grand Canyon Education v. Ward*, 358 Ga. App. 412 (855 SE2d 415) (2021). In this case, APCU contends that Davis should have been

---

[12] APCU alternately points to July, August, and September 2021 as the effective date of the amendment and when account holders were given notice. We note, however, that the only evidence in the record shows that the amendment was sent to account holders in August 2021 to be effective the following month.

compelled to arbitrate his claims arising after the arbitration provision went into effect. But Davis has repeatedly confirmed that he is limiting his claims to those that occurred prior to the Account Agreement amendments containing the arbitration clause. Thus, there is nothing to compel Davis to arbitrate.

(c) *Class description*

Finally, APCU argues that the trial court abused its discretion by certifying a vague and imprecise class with respect to when the class ends. It admits, however, that it agrees the class could be certified through the end of August 2021 when the amendments to the Account Agreement, which contained the notice and arbitration provisions, went into effect. At the hearing, Davis suggested that the time period would be October 2015 through December 2023, but in his appellate brief, he admits that the "claims involve fees assessed from December 2016 to August 2021."

As noted in our discussion of the Cosby case, the trial court retains authority to amend or modify the class as the case progresses. *J. M. I. C. Life Ins. Co.*, 280 Ga. App. at 378 (2) (c); OCGA § 9-11-23 (c) (1).

Because Davis now concedes that his claims are limited to those arising prior to September 1, 2021, we vacate the trial court's order with instructions to clarify that the class extends only through that date.

*Judgment affirmed in Case No. A24A1694. Judgment affirmed in part, and case remanded with direction in Case No A24A1854. Land and Davis, JJ., concur.*